MATTER OF M—S—

In DEPORTATION Proceedings

A-12706474

*Decided by Board March 22, 1962*

Deportability—Section 241(a)(4)—Conviction for crime committeed within five years after entry.

Respondent entered the United States as an agricultural laborer in December 1959; committed statutory rape on June 1, 1960; was admitted for permanent residence on October 27, 1960; and was convicted of the crime in March 1961, resulting in a sentence to imprisonment for five years. Held: respondent is deportable under section 241(a)(4) as a person who has been convicted of a crime involving moral turpitude committed within five years after his 1959 entry. Law and facts distinguish this case from *Bonetti* v. *Rogers*, 356 U.S. 691.

CHARGE:

Order: Act of 1952—Section 241(a)(4) [8 U.S.C. 1251(a)(4)]—Convicted of a crime involving moral turpitude and sentenced to confinement for year or more.

### BEFORE THE BOARD

DISCUSSION: Respondent is 38 years old, married, male, a native and citizen of Mexico. He is at present serving a sentence of five years in the State Penitentiary, Central Farm #1, Texas Department of Corrections, Sugarland, Texas, for the crime of statutory rape upon his 15-year-old stepdaughter committed June 1, 1960. He was convicted for this offense in the District Court of Hidalgo County, Texas, by a jury upon his plea of guilty during the March term, 1961. The special inquiry officer found respondent deportable on the charge set forth above, ordered that he be deported from the United States in the manner provided by law, and certified the case to this Board for final decision. The alien was not represented and requests only that he be permitted to remain in the United States, if possible, following his release from confinement, in order that he may support his United States citizen wife and two minor citizen children.

The question upon which the special inquiry officer certified the case arises from the fact that the crime was committed by the alien

643

after his entry in December 1959, but before his admission for permanent residence on October 27, 1960, while his conviction did not occur until March 1961. In December 1959 respondent entered the United States as an alien agricultural laborer (bracero), in which status he has entered several times. The offense for which he was convicted occurred on or about June 1, 1960, according to the indictment. The respondent returned to Mexico and applied for an immigration visa at the American Consulate in Monterrey, Mexico, on October 26, 1960. At that time he was asked if he had ever been arrested or convicted of any crime; he answered in the negative. He was also asked whether he had *committed* any crime. His visa application says, "No." He was asked by the examining officer whether *at the time of committing the crime or thereafter* he felt that he had committed a crime. He agreed that he had, and that he concealed the crime from the American consul, but said he did not think about the event or offense in connection with securing the immigration visa. He testified that he "did not think anything one way or the other" about this particular incident in relation to procuring his visa. He was admitted to the United States for permanent residence on October 27, 1960. He was arrested about the first of February 1961, and a child was born to his stepdaughter in March, while respondent was in jail.

There is no question but that respondent is deportable under section 241(a)(4) as a person who has been convicted of a crime involving moral turpitude committed within five years after entry. It is not necessary that the "entry" referred to in the charge be respondent's last entry. The special inquiry officer is correct, of course, in holding that the word "entry" can refer to respondent's 1959 entry as an agricultural worker. The judicial and administrative authority cited by the special inquiry officer is sufficient, and there is no need for us to add additional citations. The 1952 Act, section 101(a)(13), defined "entry" as any coming of an alien into the United States from a foreign port or place. It has long been held that so far as criminal grounds of deportation are concerned there is no obligation on the Service to choose the last or any particular entry in framing the charge. The issuance of the immigrant visa at Monterrey, following the commission of the crime in the United States of which the consul was not aware, did nothing to improve respondent's status as regarded the criminal charge.

The special inquiry officer has discussed the application of *Bonetti* v. *Rogers*, 356 U.S. 691, to the present matter, and distinguished this case from *Bonetti* on the law and the facts. We agree with his conclusion and would only add that in the instant case the alien's *actual* residence began before his legal residence commenced, and he was living here when the ground of deportation

(or exclusion) arose. Respondent's residence here was actually continuous in that he departed to Mexico, obtained his documents and immediately returned to his home in Texas. As the special inquiry officer has stated, this was not the case with Bonetti who, at the time of his admission in 1938, was neither excludable nor deportable.

As the special inquiry officer also points out, the alien may well be deportable under provisions of the Act other than that set forth in the order. However, no other charge was brought, and the charge stated in the order to show cause is adequate. The decision of the special inquiry officer will be affirmed.

**ORDER:** It is ordered that the order of the special inquiry officer of November 2, 1961, be and is hereby affirmed.