## In re Musiliu Aremu SHANU, Respondent

File A74 932 039 - Baltimore

*Decided June 6, 2005*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  The phrase "date of admission" in section 237(a)(2)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(i) (2000), refers to, among other things, the date on which a previously admitted alien is lawfully admitted for permanent residence by means of adjustment of status.

(2)  An alien convicted of a single crime involving moral turpitude that is punishable by a term of imprisonment of at least 1 year is removable from the United States under section 237(a)(2)(A)(i) of the Act if the crime was committed within 5 years after the date of any admission made by the alien, whether it be the first or any subsequent admission.

FOR RESPONDENT: Theresa I. Obot, Esquire, Baltimore, Maryland

FOR THE DEPARTMENT OF HOMELAND SECURITY: Christopher R. Coxe, Jr., Assistant District Counsel

BEFORE:   Board Panel:  FILPPU, COLE, and HESS, Board Members.

FILPPU, Board Member:

The respondent appeals from an Immigration Judge's January 22, 2003, decision finding him removable from the United States pursuant to section 237(a)(2)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(i) (2000), and pretermitting his application for cancellation of removal under section 240A(a) of the Act, 8 U.S.C. § 1229b(a) (2000). The appeal will be dismissed.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The respondent, a 36-year-old, native and citizen of Nigeria, was first admitted to the United States on June 8, 1989, as a nonimmigrant visitor for pleasure.  On December 20, 1996, his status was adjusted to that of a lawful permanent resident of the United States pursuant to section 245 of the Act, 8 U.S.C. § 1255 (1994).  On July 16, 1998, he was convicted in the United States District Court for the Western District of Tennessee of various federal fraud crimes, all of which were punishable by terms of imprisonment of one

year or more. According to the criminal judgment, the respondent committed his offenses on or about June 13, 1997.

On the basis of these convictions, the Department of Homeland Security ("DHS," formerly the Immigration and Naturalization Service) charged the respondent with deportability from the United States under section 237(a)(2)(A)(i) of the Act, which provides:

> Any alien who —
>> (I) is convicted of a crime involving moral turpitude committed within five years (or 10 years in the case of an alien provided lawful permanent resident status under section 245(j) of this title) after the date of admission, and
>> (II) is convicted of a crime for which a sentence of one year or longer may be imposed,
> is deportable.

During removal proceedings before the Immigration Judge, the respondent moved to dismiss this charge, arguing that none of his crimes were committed within 5 years after the date of his admission to the United States as a nonimmigrant in June 1989. The Immigration Judge denied the respondent's motion to dismiss the charge, concluding that under *Matter of Rosas*, 22 I&N Dec. 616 (BIA 1999), the relevant "date of admission" under section 237(a)(2)(A)(i) was December 20, 1996, the date when the respondent's status was adjusted to that of a lawful permanent resident. Because the respondent committed his crimes less than 5 years after December 20, 1996, the Immigration Judge found him deportable as charged. Moreover, although the respondent expressed an intention to apply for cancellation of removal under section 240A(a) of the Act, the Immigration Judge ultimately refused to entertain the application, deeming it to have been abandoned as a result of the respondent's failure to file it in a timely manner.

## II. ISSUES

Although the respondent does not dispute that some or all of his crimes involved moral turpitude,[1] he does contend that the Immigration Judge erred by identifying the date of his adjustment of status as the relevant "date of admission" that began the 5-year period during which his commission of a single crime involving moral turpitude could render him deportable under section 237(a)(2)(A)(i) of the Act. Furthermore, the respondent challenges the fundamental fairness of the Immigration Judge's decision to pretermit his cancellation of removal application. Thus, we are confronted with three appellate issues.

At the outset, we must determine whether December 20, 1996—the date when the respondent adjusted his status—qualifies as a "date of admission"

---

[1] It is well settled that fraud crimes involve moral turpitude. *Jordan v. DeGeorge*, 341 U.S. 223, 227-29 (1951).

within the meaning of section 237(a)(2)(A)(i) of the Act. If we conclude that it does so qualify, we must then determine whether it qualifies as a date of admission that begins the statutory 5-year period in this instance. Finally, if we are satisfied as to the respondent's deportability, we must determine whether the Immigration Judge deprived the respondent of his right to a full and fair hearing by pretermitting his application for cancellation of removal.

## III. ANALYSIS

### A. Respondent's Removability Under Section 237(a)(2)(A)(i)

Whether December 20, 1996, qualifies as a "date of admission" under section 237(a)(2)(A)(i) of the Act depends on whether adjustment of status under section 245 of the Act qualifies as "an admission" to the United States within the meaning of the immigration law. At the outset, it must be acknowledged that adjustment of status does not conform to the statutory definition of the term "admission" set forth at section 101(a)(13)(A) of the Act, 8 U.S.C. § 1101(a)(13)(A) (2000), which states that "[t]he terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." As the Immigration Judge correctly observed, however, we have determined that section 101(a)(13)(A) does not provide an exhaustive definition of the term "admission," and that an alien present in the United States who has been accorded the privilege of lawful permanent residence is also deemed to have been "admitted" as of the date of adjustment, even if the alien has never been "admitted" within the meaning of section 101(a)(13)(A). *See Matter of Rosas*, *supra*.

In *Matter of Rosas*, *supra*, at 618-19, we held that an alien who had entered the United States without inspection and then adjusted her status pursuant to section 245A(b) of the Act, 8 U.S.C. § 1255a(b) (1988), had, by virtue of that adjustment, effected an "admission" to the United States within the meaning of section 237(a)(2)(A)(iii) of the Act, such that her conviction for an aggravated felony after the date of adjustment qualified as a conviction "after admission." Our determination that adjustment of status qualified as an "admission" found explicit support in the language of section 101(a)(20) of the Act, 8 U.S.C. § 1101(a)(20) (1994), which states that an alien who has been "lawfully accorded the privilege of residing permanently in the United States as an immigrant" has been "lawfully *admitted* for permanent residence." (Emphasis added.)

This interpretation was also supported by other statutory language manifesting Congress's understanding that the term "admission" encompasses adjustment of status, and not just entry at the border with an immigrant or nonimmigrant visa. Particularly relevant to an alien, such as the respondent, whose status has been adjusted under section 245 of the Act, are section

245(a)(2) of the Act, which requires that an alien be "admissible" as a condition for adjusting status, and section 245(b), which directs the Attorney General to "record the alien's lawful admission for permanent residence" upon approval of his or her adjustment application. Similar language appears in other sections of the Act that touch upon adjustment of status. *See, e.g.*, sections 101(a)(13)(C), 209(b), 210(a)(2), 216(a)(1), 240A(b)(1), 245A(b)(1) of the Act, 8 U.S.C. §§ 1101(a)(13)(C), 1159(b), 1160(a)(2), 1186a(a)(1), 1229b(b)(1), 1255a(b)(1) (2000). This choice of language persuades us that when Congress enacted section 237(a)(2) of the Act, it intended that the term "admission" should be interpreted to include adjustment of status. Accordingly, we conclude that the term "date of admission" in section 237(a)(2)(A)(i) refers to, among other things, the date on which an alien is lawfully admitted for permanent residence by means of adjustment of status.

We recognize that *Matter of Rosas, supra*, is factually distinguishable from the instant case because, unlike this respondent, the alien in that case had never been "admitted" within the meaning of section 101(a)(13)(A) prior to her adjustment of status, but had instead entered the United States without inspection (necessitating her adjustment under section 245A of the Act rather than section 245). Indeed, the unlawful nature of the alien's initial entry was significant in *Matter of Rosas*, because it served to underscore how strict reliance on the "admission" definition of section 101(a)(13)(A) could lead to peculiar results in some cases.[2]

The respondent suggests that such peculiar results are less likely to occur with respect to aliens who have been admitted under section 101(a)(13)(A) prior to having adjusted status, but we are by no means certain that this is true. We observe, for example, that waivers of inadmissibility under sections 212(h)(1)(B) and (i)(1) of the Act, 8 U.S.C. §§ 1182(h)(1)(B) and (i)(1) (2000), are available only to those aliens who can demonstrate that a "denial of *admission*" or "refusal of *admission*" would result in extreme hardship to a qualifying relative. (Emphasis added.) Because the denial of an application for adjustment of status is tantamount to a denial or refusal of "admission" under the immigration laws, we permit aliens—including aliens previously admitted within the meaning of section 101(a)(13)(A)—to seek a waiver under section 212(h)(1)(B) or section 212(i)(1) in conjunction with an application for adjustment of status.

---

[2] We noted that unless the term "admitted" were deemed to include adjustment of status, an alien who adjusted status after entering the United States without inspection would remain susceptible to removal under section 212(a)(6)(A)(i) of the Act as an alien present in the United States without having been admitted or paroled. *Matter of Rosas, supra*, at 621. Likewise, such an alien would also be ineligible for forms of relief from removal, such as cancellation of removal under section 240A(a), that require an alien to have been admitted to the United States. *Matter of Rosas, supra*, at 623.

In any event, *Matter of Rosas*, *supra*, does not stand for the proposition that adjustment of status should be considered an "admission" only when failure to do so would lead to an absurd or unreasonable result in a particular case. On the contrary, the potential for unreasonable results was merely a fact marshaled to support our interpretation of the aforementioned statutory language. It is that language, and not the possibility of unreasonable results, that drove our analysis in *Matter of Rosas* and continues to drive it today.

Furthermore, the rationale set forth in *Matter of Rosas*, *supra*, which we continue to espouse, is not the only basis for our conclusion that an adjustment of status must be deemed an "admission" in the present context. There are also reasons, peculiar to the language of section 237(a)(2)(A)(i) itself, for drawing such a conclusion. Specifically, we refer to the parenthetical phrase in section 237(a)(2)(A)(i) stating that "an alien provided lawful permanent resident status under section 245(j)" can be rendered deportable if convicted of a crime involving moral turpitude committed within 10 years after the date of admission (rather than within the otherwise-applicable 5-year period).[3] We believe that by making an alien's acquisition of lawful permanent resident status the event that extends his period of vulnerability to removal under section 237(a)(2)(A)(i), Congress manifested its understanding that the relevant 10-year period may be measured from the date when that status was acquired.

This interpretation of section 237(a)(2)(A)(i) finds explicit support in the regulations governing aliens who adjust status under section 245(j), which clearly state that "[n]othing in this section shall prevent an alien adjusted pursuant to the terms of these provisions from being removed for conviction of a crime of moral turpitude committed within 10 years *after being provided lawful permanent residence* under this section." 8 C.F.R. §§ 245.11(h), 1245.11(h) (2004) (emphasis added). These regulations have the force and effect of law as to this Board and the Immigration Judges. *See Matter of Fede*, 20 I&N Dec. 35, 36 (BIA 1989). Thus, in light of the fact that adjustment of status under section 245(j) indisputably qualifies as an "admission" for purposes of section 237(a)(2)(A)(i), it would be anomalous to conclude that adjustment under other subsections of section 245 does not. We therefore conclude that the respondent's adjustment of status constitutes an "admission" to the United States, and that December 20, 1996—the date of his adjustment of status—is a "date of admission" for purposes of section 237(a)(2)(A)(i) of the Act.

---

[3] This parenthetical phrase was inserted into the statutory predecessor to current section 237(a)(2)(A)(i) by operation of section 130003(d) of the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796, 2026 (effective Sept. 13, 1994).

The fact that December 20, 1996 qualifies as a "date of admission" under section 237(a)(2)(A)(i) of the Act is not dispositive of the respondent's appeal, however, because he was also "admitted" to the United States—within the meaning of section 101(a)(13)(A) of the Act—when he entered the country as a nonimmigrant in June 1989. There is no serious doubt that Congress intended the phrase "date of admission" to apply to the date when an alien makes a section 101(a)(13)(A) admission. However, section 237(a)(2)(A)(i) of the Act does not, by its terms, specify which of an alien's multiple "admission" dates can be considered where some, but not all, of those dates are less than 5 years prior to the date of the alien's commission of a crime involving moral turpitude. Accordingly, as the tribunal vested with the Attorney General's authority to administer the Immigration and Nationality Act, we must arrive at a reasonable interpretation of Congress's language. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-44 (1984).

With this responsibility firmly in mind, we conclude that Congress intended—with respect to aliens who have been admitted to the United States more than once—that each and every date of admission qualifies as a potentially "relevant" date of admission under section 237(a)(2)(A)(i). Thus, an alien convicted of a single crime involving moral turpitude (punishable by a term of imprisonment of at least 1 year) is removable from the United States under section 237(a)(2)(A)(i) if the crime was committed within 5 years after the date of *any* admission made by that alien, whether it be the first, last, or any other admission.

The respondent maintains that as applied to him, the term "date of admission" refers to June 8, 1989, the date of his *first* admission as a nonimmigrant, and not to the date of any subsequent admission he may have made. A rule of decision that focuses exclusively on an alien's first admission date would certainly have the advantage of simplicity. However, such a rule is not reconcilable with the language and underlying purpose of section 237(a)(2)(A)(i) and would represent a dramatic departure from the historical practice of this Board and the federal courts in like cases under prior law. The respondent has provided no affirmative evidence that Congress intended such a change in law, and we do not believe that Congress understood such a change to have been effected when it enacted section 237(a)(2)(A)(i).

As previously discussed, an alien who has acquired lawful permanent resident status pursuant to section 245(j) of the Act may be found removable under section 237(a)(2)(A)(i) on the basis of a conviction for a crime involving moral turpitude committed within 10 years after the date when he adjusted his status. *See* 8 C.F.R. §§ 245.11(h), 1245.11(h). In light of this fact, we deem it significant that the only aliens who qualify for adjustment of status under section 245(j) are those who were *previously admitted* to the

United States as nonimmigrants pursuant to section 101(a)(15)(S)(i) of the Act.  *See* sections 245(j)(1)(A), (2)(A) of the Act.

Under the respondent's approach to section 237(a)(2)(A)(i), which focuses on an alien's first admission only, the statutory 10-year period would have to be measured from the date of this initial nonimmigrant admission.  Yet the language and purpose of the statute and its implementing regulations simply cannot be reconciled with that interpretation.  We find no indication in the legislative history of section 237(a)(2)(A)(i), or the regulatory history of 8 C.F.R. §§ 245.11(h) and 1245.11(h), that Congress or the Attorney General intended that the phrase "date of admission" should have one meaning for aliens granted lawful permanent resident status under section 245(j) and a different, narrower meaning for all other aliens.

On the contrary, we believe that the treatment of aliens who adjusted status under section 245(j) is reflective of Congress's broader understanding of the scope of section 237(a)(2)(A)(i) and its statutory predecessors, and our analysis of the respondent's case is guided by that understanding.  We therefore hold that the 5-year period specified in section 237(a)(2)(A)(i) may be measured from the date of an alien's admission to lawful permanent residence, notwithstanding the fact that the alien was previously admitted as a nonimmigrant.[4]

---

[4]  We note that adjustment of status pursuant to section 245(j) constitutes an admission under section 237(a)(2)(A)(i) regardless of whether the applicant sought such status during his period of authorized stay as a nonimmigrant.  In other words, a nonimmigrant admitted under section 101(a)(15)(S)(i) of the Act need not "overstay" his 3-year visa or depart the United States in order for his subsequent adjustment under section 245(j) to be considered an "admission" within the meaning of section 237(a)(2)(A)(i).  In fact, the regulations governing adjustment of status under section 245(j) appear to contemplate that the alien will be "in S nonimmigrant classification" when the adjustment application is filed. 8 C.F.R. §§ 245.11(a), 1245.11(a).

The United States Court of Appeals for the Ninth Circuit has held, with respect to an alien who adjusted his status during the period of his authorized stay as a long-term nonimmigrant student, that the date of the alien's admission as a nonimmigrant was the relevant "date of admission" under section 237(a)(2)(A)(i).  *Shivaraman v. Ashcroft*, 360 F.3d 1142 (9th Cir. 2004).  While the holding in *Shivaraman* is in some tension with our present decision, it is distinguishable because the respondent's nonimmigrant admission in 1989 was on a short-term tourist visa, valid for no more than 1 year.  8 C.F.R. § 214.2(b)(1) (1989).  The record does not reflect that the respondent ever sought or acquired extensions of his nonimmigrant status between June 1989 and December 1996, a period of approximately 90 months.  Moreover, any extension the respondent may have received would have expired within 6 months.  *See id.*  To have maintained his nonimmigrant status up to the date of his adjustment in December 1996, the respondent would therefore have required 15 separate extensions.  Although the Immigration Judge made no specific factual finding as to the respondent's status at the time of his adjustment in 1996, we deem it highly unlikely that he was, at that time, still within the period of his authorized stay as a nonimmigrant.

The policy implications of the "first admission" approach, and the peculiar consequences that would often flow from embracing it, also persuade us that it is not in accord with congressional intent. We consider, for example, the hypothetical case of an alien admitted to the United States as a nonimmigrant student in 1966. After completing his course of study in 1970, the alien returned to his home country, residing there continuously until his marriage to a United States citizen in 2001. In 2002 the alien returned to the United States as an immigrant and immediately proceeded to engage in a scheme of mail fraud, resulting in a 2004 Federal conviction and a sentence to an 8-month term of imprisonment and the payment of $7,500 in restitution to his victims.

Under the "first admission" approach, the alien described above would not be removable under section 237(a)(2)(A)(i), despite the fact that he committed his crimes immediately after his admission to the United States as an immigrant, because more than 5 years had elapsed since his first admission as a nonimmigrant in 1966. In the absence of clear congressional intent, we do not believe that section 237(a)(2)(A)(i) should be interpreted in a manner that would attach such disproportionate significance to long-past nonimmigrant admissions and that would so seriously undermine the deterrent effect of section 237(a)(2)(A)(i) as it relates to aliens with multiple admissions.

Furthermore, focusing exclusively on an alien's first admission would give rise to gratuitous distinctions among lawful permanent residents with respect to the applicability of section 237(a)(2)(A)(i). Lawful admission to permanent residence in the United States is an important event, signifying this country's acceptance of the alien, and possibly his family, into our national community, potentially for the rest of his life, with all the rights, privileges, and responsibilities that it entails. It is no less significant that this event arises by means of adjustment of status than by arrival from abroad on an immigrant visa. Indeed, an alien who commits a crime involving moral turpitude within 5 years after adjusting status has betrayed the trust of his national community and violated the immigration laws no less severely than an alien who committed the same crime less than 5 years after being admitted as a lawful permanent resident at the border. It is reasonable to believe that Congress intended section 237(a)(2)(A)(i) to be interpreted in a manner that would accord both aliens equal treatment under the law. Yet under the "first admission" approach espoused by the respondent, aliens who acquire lawful permanent residence by means of adjustment after a prior nonimmigrant admission would be significantly less likely than aliens admitted for the first time as immigrants to face removal due to crimes committed within 5 years after they acquired lawful permanent resident status.

Finally, the approach espoused by the respondent is not consistent with the historical practice of this Board and the Federal courts under prior law. Current section 237(a)(2)(A)(i) of the Act is merely the most recent iteration

of a long-standing statutory provision, extending back to section 19 of the Immigration Act of February 5, 1917, 39 Stat. 874, which provides for the removal from the United States of aliens who have committed a single crime involving moral turpitude. The various statutory predecessors to section 237(a)(2)(A)(i) have often been the subject of judicial and administrative interpretation, and a question raised and resolved relatively early in the provision's history is essentially the same as that now before us, i.e., how to determine whether an alien, convicted of a single crime involving moral turpitude, committed his crime "prior to" or "within 5 years after" his entry where the alien in question "entered" on multiple occasions.

In *United States ex rel. Volpe v. Smith*, 289 U.S. 422 (1933), a case involving interpretation of former section 19(a) of the 1917 Act, the United States Supreme Court was called upon to review a deportation order of the Department of Labor ("DOL") that was issued against a native and citizen of Italy who was charged with having been convicted, "prior to entry," of "a felony or other crime or misdemeanor involving moral turpitude." The alien in *Volpe* had entered the United States for the first time in 1906 and had remained within the country continuously for several decades thereafter. In 1925, he sustained a Federal conviction for counterfeiting United States obligations, a crime involving moral turpitude. Because the crime had been committed more than 5 years after what was then his only "entry" in 1906, the offense did not render him deportable. In 1928, however, the alien traveled abroad briefly and was readmitted to the United States. The DOL then sought to deport him as an alien convicted of a crime involving moral turpitude "prior to entry," i.e., prior to his 1928 "entry." The Supreme Court held that the alien was deportable as charged and that the term "entry," as employed in former section 19(a), referred to *any* entry of the alien into the United States, whether it be the first or any subsequent one. *Id.* at 425-26.

In light of the Supreme Court's decision in *Volpe*, from our earliest days we have consistently held that the term "entry," as employed in the various predecessor versions of current section 237(a)(2)(A)(i) of the Act, refers to *any* entry and is not restricted to either the first entry made by the alien, or to the last. *See, e.g.*, *Matter of Sanchez*, 17 I&N Dec. 218 (BIA 1980); *Matter of Medina*, 15 I&N Dec. 611, 614-15 (BIA 1976); *Matter of M-S-*, 9 I&N Dec. 643, 644 (BIA 1962); *Matter of A-*, 6 I&N Dec. 684 (BIA 1955); *Matter of L-*, 1 I&N Dec. 1 (BIA, A.G. 1940). The Federal courts of appeals have upheld this view. *Munoz-Casarez v. INS*, 511 F.2d 947 (9th Cir. 1975); *United States ex rel. Circella v. Sahli*, 216 F.2d 33 (7th Cir. 1954). Thus, although the meaning of the term "entry" has been modified throughout the years by various judicial decisions and statutory amendments, the basic premise of the *Volpe* decision, i.e., that a crime involving moral turpitude

committed either "prior to" or "within 5 years after" *any* entry would provide a basis for exclusion or deportation, has remained intact.[5]

We recognize that the concept of "entry" has been superseded by the concept of "admission" pursuant to the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Div. C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"). This change—one of both substance and nomenclature—is reflected in the language of current section 237(a)(2)(A)(i) of the Act, which now refers to crimes involving moral turpitude committed within 5 years after "the date of admission," rather than within 5 years after "entry."[6]

While the concepts of "entry" and "admission" differ in important ways, many of which were discussed in *Matter of Rosas*, *supra*, none of these differences are germane to whether Congress intended to retain the substance of the "any entry" rule after the passage of the IIRIRA. This is so because the validity of the *Volpe* rule does not depend on the acceptance of any particular definition for the term "entry" or "admission."[7] Rather, it is merely a procedural device for identifying the "date" of entry or admission in doubtful cases, and, as such, it may be applied regardless of the particular form of words used and regardless of the substantive meaning given to its referent—be it "entry" or "admission"—at any given time.

---

[5] We do not understand Congress's occasional incorporation of the "any entry" concept in certain individual grounds of deportability to represent a disavowal of *Volpe's* "any entry" rule in the crime involving moral turpitude context. *See* sections 237(a)(1)(E)(i), (G)(i) of the Act. For example, this Board and the Federal courts continued to follow *Volpe* long after the enactment of former section 241(c) of the Act, 8 U.S.C. § 1251(c) (1952), the statutory predecessor of current section 237(a)(1)(G)(i).

[6] Congress did not simply replace the term "entry" with the term "admission." It chose instead to use the phrase "the date of admission." Yet we find little significance in Congress's addition of the words "the date of" preceding "admission." It was no less important under prior law for an adjudicator to identify a particular date when seeking to ascertain, in retrospect, when the 5-year clock began to run under the predecessor versions of section 237(a)(2)(A)(i), since it is only by identifying such a specific date that one can determine with reliability whether the relevant event, i.e., the alien's "entry" or "admission," preceded the date of his commission of the crime by more or less than 5 years.

[7] Under the *Volpe* decision, for example, the term "entry" was interpreted very broadly to encompass any coming into the United States from abroad, voluntary or otherwise. *See United States ex rel. Volpe*, *supra*, at 425. Congress and the Supreme Court subsequently concluded that the term "entry" had a narrower meaning as applied to lawful permanent residents, who were not to be deemed to be seeking an entry if they were coming into the United States after a brief, casual, and innocent departure. *See* Immigration and Nationality Act of 1952, ch. 477, § 101(a)(13), 66 Stat. 163 (codified at 8 U.S.C. § 1101(a)(13) (1952)); *Rosenberg v. Fleuti*, 374 U.S. 449 (1963). Yet this rather fundamental change to the substantive meaning of the term "entry" had no effect on the validity of the "any entry" rule, because the applicability of that rule did not turn upon the meaning of the term "entry."

Because there is nothing in the differences between "entry" and "admission" that would make application of the *Volpe* rule inappropriate to the latter, we conclude, in the absence of evidence that Congress intended a contrary result, that the "any entry" rule survived the amendments made by the IIRIRA.   Thus, an alien may be rendered removable under section 237(a)(2)(A)(i) based on a crime involving moral turpitude committed within 5 years after *any* admission to the United States, whether it be the first or any subsequent admission.

In conclusion, the language and purpose of Congress and the historical treatment of similar cases under prior law lead us to conclude that an alien convicted of an otherwise-qualifying crime involving moral turpitude that was committed within 5 years after the date of any of the alien's admissions to the United States is removable under section 237(a)(2)(A)(i) of the Act.  Applying this holding to the facts of the respondent's case, we observe that his crimes were committed less than 5 years after his admission to lawful permanent residence on December 20, 1996.  Therefore, we agree with the Immigration Judge that the respondent is removable as charged.

## B.  Pretermission of the Respondent's Application for Cancellation of Removal

In addition to his challenge to the Immigration Judge's finding of removability, the respondent contends that the Immigration Judge deprived him of his right to a full and fair hearing by refusing to adjudicate his application for cancellation of removal on grounds of untimeliness.  We disagree.

Applications for benefits under the Immigration and Nationality Act—including applications for cancellation of removal—are properly denied as abandoned when the applicant fails to file them in a timely manner. 8 C.F.R. § 1003.31(c) (2003); *Matter of R-R-*, 20 I&N Dec. 547, 549 (BIA 1992).  In addition to the oral notices provided directly to the respondent by the court, the record contains a copy of a notice, dated June 24, 2002, issued by the Baltimore Immigration Court and directed to the respondent's attorney, ordering the respondent to appear on January 22, 2003, for an "Individual Calendar" hearing on the merits of his case, rather than a preliminary "Master Calendar" hearing.  This notice adequately informed the respondent and his counsel that the January 22, 2003, hearing would be for the purpose of receiving testimony on the merits of the respondent's cancellation of removal application and for entry of appropriate orders by the Immigration Judge.  The fact that the respondent appeared in court on January 22, 2003, with several potential witnesses strongly suggests that the respondent and counsel fully understood that the purpose of the hearing was to address the merits of his cancellation of removal application, rather than simply to accomplish the administrative act of submitting the application into the record.

The respondent did not submit his application for cancellation of removal in advance of his Individual Calendar hearing, as required by the Immigration Judge and the Local Operating Procedures of the Baltimore Immigration Court.[8] Instead, he appeared on the date scheduled for the hearing and sought to have the application placed into the record for the first time. The Immigration Judge and counsel for the DHS could not have reviewed the application and all its attachments in sufficient detail on such short notice. Moreover, considering that approximately 6 months had passed since the respondent's final Master Calendar hearing, it would not have been reasonable to expect the Immigration Judge to grant an adjournment. Under the circumstances, therefore, we agree that the respondent's cancellation of removal application was not filed in a timely manner and that the Immigration Judge acted within the scope of her discretion when she deemed that application abandoned pursuant to 8 C.F.R. § 1003.31(c).

## IV. CONCLUSION

In conclusion, we agree with the Immigration Judge that the respondent is removable from the United States as an alien convicted of a crime involving moral turpitude committed within 5 years after the date of his admission to the United States. Moreover, we find no reversible error in the Immigration Judge's decision to pretermit the respondent's untimely application for cancellation of removal on grounds of abandonment. Accordingly, the respondent's appeal will be dismissed.

**ORDER:** The appeal is dismissed.

---

[8] The recollection of both the Immigration Judge and trial counsel for the DHS was that the respondent's cancellation of removal application was to be filed with the court by July 24, 2002, many months before the date on which the application was actually submitted. Moreover, Procedure 5.B. of the Baltimore Local Operating Procedures, issued pursuant to 8 C.F.R. § 3.40 (2002), makes clear that once an Individual Calendar hearing date has been set, "all proposed exhibits . . . must be filed with the Immigration Court no later than ten (10) calendar days prior to the scheduled Individual Calendar hearing." Obviously, where the purpose of an Individual Calendar hearing is to adjudicate the merits of an application for cancellation of removal, the application itself is an important "exhibit" in support of the claim.