**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-1718**

MUSTAFA MOHAMED SALAMA,

                    Petitioner,

          v.

ERIC H. HOLDER, JR., Attorney General,

                    Respondent.

On Petition for Review of an Order of the Board of Immigration
Appeals.

Argued:  September 24, 2009          Decided:  October 22, 2009

Before TRAXLER, Chief Judge, HAMILTON, Senior Circuit Judge, and
Mark S. DAVIS, United States District Judge for the Eastern
District of Virginia, sitting by designation.

Petition for review denied by unpublished per curiam opinion.

**ARGUED:** Thomas A. Elliot, ELLIOT & MAYOCK, LLP, Washington,
D.C., for Petitioner.  James A. Hurley, UNITED STATES DEPARTMENT
OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:**
Fabienne Chatain, Thomas H. Tousley, ELLIOT & MAYOCK, LLP,
Washington, D.C., for Petitioner.  Gregory G. Katsas, Assistant
Attorney General, Stephen J. Flynn, Assistant Director, UNITED
STATES DEPARTMENT OF JUSTICE, Office of Immigration Litigation,
Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Mustafa Mohamed Salama petitions for review of an order denying him an adjustment of status. Because he failed to challenge the basis for the decision of the Board of Immigration Appeals and instead focused solely on the immigration judge's decision, he has waived his challenge to the Board's decision. Thus, we are compelled to deny Salama's petition for review.

I.

Salama is a native of Egypt who entered the United States in 1978 on a nonimmigrant B-2 visa. In 1983, Salama's status was adjusted to that of Lawful Permanent Resident ("LPR") based on his marriage to a U.S. citizen.

After obtaining LPR status, Salama was twice convicted on federal charges. In 1991, Salama was convicted on federal counterfeiting charges, see 18 U.S.C. § 474(a), for which he was sentenced to a prison term of 27 months. In 2003, Salama was convicted in federal court for conspiracy to commit credit card fraud, see 18 U.S.C. § 1029(b)(2) and (c)(1)(A)(i), for which he was sentenced to five years of probation and required to pay restitution.

In 2004, the Department of Homeland Security ("DHS") sought to remove Salama on two grounds under the Immigration and Nationality Act ("INA"):   (1)  that, based on his 1991

2

counterfeiting conviction, Salama had been convicted of an aggravated felony after having been admitted to the United States, see 8 U.S.C. § 1227(a)(2)(A)(iii) and 8 U.S.C. § 1101(a)(43)(R); and (2) that, based on the 1991 and 2003 convictions, Salama had been convicted of two or more crimes of moral turpitude after having been admitted to the United States, see 8 U.S.C. § 1227(a)(2)(A)(ii). The immigration judge ("IJ") determined that both offenses qualified as crimes of moral turpitude and that the 1991 conviction constituted an aggravated felony as well. In accordance with these conclusions, the IJ adjudged Salama removable on both grounds charged by the DHS.

To escape removal, Salama applied to have his status adjusted, once again, to that of LPR under section 245(a) of the INA. See 8 U.S.C. § 1255(a). Salama also requested cancellation of removal under INA § 240A(a). See 8 U.S.C. 1229b(a). The IJ denied Salama's request for relief on both bases, and the Board of Immigration Appeals ("BIA") affirmed. In his Petition for Review to this court, Salama challenged both determinations; however, at oral argument, he withdrew his challenge to the BIA's denial of cancellation of removal under section 240A(a) of the INA. Accordingly, Salama's sole

3

challenge before this panel concerns the BIA's denial of an adjustment of Salama's status.[*]

## II.

In order to adjust his temporary status to that of a permanent resident, an alien must demonstrate, among other things, that he "is admissible to the United States for permanent residence." 8 U.S.C. § 1255(a). In other words, an alien must be admissible to the United States to be eligible for an adjustment of status. Under the INA, an alien is inadmissible – and therefore ineligible for an adjustment of status – if he has been "convicted of" or "admits having committed . . . a crime involving moral turpitude." 8 U.S.C. § 1182(a)(2)(A)(i)(I). Salama does not dispute the IJ's conclusion that both underlying convictions qualify as crimes of moral turpitude that potentially render him inadmissible under INA § 1182(a)(2)(A)(i)(I) and therefore unable to satisfy the

---

[*] Salama requested two additional forms of relief that are not at issue in this court: withholding or deferral of removal under the Convention Against Torture ("CAT"), and withholding of removal under the INA, see 8 U.S.C. § 1231(b)(3)(A). The IJ denied Salama's request for withholding of removal under the INA but granted relief under the CAT. The BIA affirmed both conclusions. In his petition for review, Salama does not challenge the BIA's denial of withholding of removal.

admissibility requirement for an adjustment of status under § 1255(a).

Thus, Salama is down to his last resort -- asking for a discretionary waiver of inadmissibility. See 8 U.S.C. § 1182(h)(1)(B). The INA affords the Attorney General discretion to grant, in certain circumstances, a waiver of inadmissibility based on hardship. Section 1182(h) permits the Attorney General, "in his discretion, [to] waive the application of subparagraph[] (A)(i)(I)," which classifies as inadmissible any alien who has committed a crime of moral turpitude, for an alien with a spouse, child or parent who is a citizen or LPR and would suffer "extreme hardship" because of "the alien's denial of admission." 8 U.S.C. § 1182(h)(1)(B). Salama sought a hardship waiver based on the negative effect his removal would presumably have on his two daughters who are American citizens residing in the United States.

Although an inadmissibility waiver is ultimately a discretionary form of relief, Congress imposed eligibility limitations: "No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if . . . since the date of such admission the alien has been convicted of an aggravated felony . . . ." 8 U.S.C. § 1182(h) (emphasis added). Based on the foregoing language,

5

the IJ concluded that Salama was barred from receiving a waiver of inadmissibility. The IJ ruled that when Salama adjusted his status to that of a LPR in 1983, it was the equivalent of having been admitted as a LPR into the United States from abroad. Because Salama was convicted of a felony after 1983, the IJ reasoned that § 1182(h) precluded him from receiving a discretionary hardship waiver of inadmissibility:

> Respondent adjusted his status to that of a legal permanent resident in 1983 based on his marriage to a United States citizen. While Respondent argues that he was never admitted because he became a legal permanent resident through adjustment of status, this argument is erroneous. According to INA § 101(a)(20), "lawfully admitted for permanent residence" is defined as "the status of having been accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." Respondent, having obtained the privilege of residing permanently in the United States, has been admitted to the United States. During pleadings, Respondent conceded . . . that he had been convicted of an aggravated felony after admission . . . . Respondent is therefore ineligible for adjustment of status and a waiver pursuant to [§ 1182(h)] because he is an alien previously admitted to the United States as an alien lawfully admitted for permanent residence who, since the date of such admission, has been convicted of an aggravated felony.

J.A. 143 (citations omitted).

Although the BIA affirmed, it did so on expressly different grounds, eschewing the IJ's reasoning that equated the concepts of "admission" as an LPR and "adjustment of status." See generally Aremu v. Dep't of Homeland Security, 450 F.3d 578, 581 (4th Cir. 2006) (explaining that an adjustment to status differs

6

from an admission as an LPR because "such a change in status can[not] be characterized as an 'entry' into the United States") (internal quotation marks omitted). Instead, the BIA concluded that because Salama was not seeking admission into the United States, he was not eligible to seek a hardship waiver under § 1182(h), which is available only for an alien who can show that the "denial of admission would result in extreme hardship" to the alien's citizen-spouse or child. 8 U.S.C. § 1182(h) (emphasis added). The BIA explained that

> a [hardship] waiver . . . can only be granted to an alien who establishes to the satisfaction of the Attorney General that a "denial of admission" will cause extreme hardship to a qualifying relative; [§ 1182(h)] does not by its terms give the Attorney General power to waive inadmissibility for an alien who can show only that a denial of adjustment of status will cause such hardship. [Salama] is present in the United States and is applying for adjustment of status before an immigration judge; he does not seek "admission," that is, "lawful entry into the United States after inspection and authorization" . . . within the meaning of [§ 1101(a)(13)(A)]. . . . [T]he fact that [Salama] does not seek (or stand in jeopardy of being denied) "admission," as that term is defined by [§ 1101(a)(13)(A)], means that his application for a waiver of inadmissibility would have to be pretermitted, albeit for reasons different from those relied upon by the Immigration Judge.

J.A. 35.

### III.

In his petition for review to this court, Salama argues that the statutory bar to a waiver of inadmissibility applies by

7

its plain language only to aliens admitted from abroad into the United States as LPRs, as opposed to those who, having arrived and been admitted as non-immigrant visitors, adjusted to LPR status. See 8 U.S.C. § 1182(h) ("No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if . . . since the date of such admission the alien has been convicted of an aggravated felony . . . .") (emphasis added). Salama's argument is based on dual bases: (1) that the waiver bar in section 1182(h) expressly precludes only aggravated felons who were previously admitted into the United States as LPRs; and (2) that the term "admitted" into the United States is wholly distinct from "adjusted status." According to Salama, the IJ misapplied the § 1182(h) bar by "amalgamating" the concepts of "admission" as an LPR into the United States and "adjustment of status." Brief of Petitioner at 15. Salama's argument, therefore, is directed entirely at the decision of the IJ applying the aggravated felony bar of § 1182(h) to render Salama ineligible to seek a hardship waiver.

The Attorney General contends that Salama failed in his opening brief to challenge or address in any way the BIA's decision and thereby waived his challenge to it. We are constrained to agree. Unlike the IJ, the BIA did not apply the

8

§ 1182(h) bar based on Salama's aggravated felony; rather, the BIA determined that Congress did not provide the hardship waiver for an inadmissible alien seeking an adjustment of status. In his opening brief, Salama simply failed to address the BIA's decision or its rationale.

This court follows the "well settled rule that contentions not raised in the argument section of the opening brief are abandoned." See United States v. Al-Hamdi, 356 F.3d 564, 571 n.8 (4th Cir. 2004); see also Fed. R. App. P. 28(a)(9)(A); Edwards v. City of Goldsboro, 178 F.3d 231, 241 n.6 (4th Cir. 1999). We overlook this rule only in those rare circumstances where we conclude, in our discretion, that the application of the rule would result in "a miscarriage of justice." A Helping Hand, LLC v. Baltimore County, Md., 515 F.3d 356, 369 (4th Cir. 2008) (internal quotation marks omitted).

Salama reads the decision of the BIA as resting on alternative grounds – one being the rationale adopted by the IJ that Salama is ineligible for a waiver by operation of the aggravated felony bar in § 1182(h) and the other being the BIA's additional rationale that a waiver of inadmissibility is simply unavailable to someone seeking an adjustment of status. Salama acknowledges that only the former rationale was addressed in his opening brief; his challenge to the latter rationale appears

9

only in his reply brief.  Nevertheless, Salama contends that his argument was sufficient to avoid waiver.

We do not read the BIA's denial of an adjustment of status to rest on alternative grounds.  The BIA clearly did not embrace the IJ's analysis, explaining that Salama was not entitled to an adjustment of status "for reasons different from those relied upon by the Immigration Judge."  J.A. 35.  But, even if the BIA did rely on alternative bases, we fail to see how this aids Salama.  As he acknowledges, Salama focused solely on the rationale of the IJ in his opening brief and failed to address the BIA's reasoning.  See Ngarurih v. Ashcroft, 371 F.3d 182, 188 (4th Cir. 2004) (explaining that where the BIA issues its own decision rather than solely adopting the decision of the immigration judge, the court of appeals reviews the BIA's decision).  The fact that he developed an argument in his reply brief does not cure his failure to do so in the opening brief.  See Yousefi v. USINS, 260 F.3d 318, 326 (4th Cir. 2001) (per curiam).

Moreover, we decline to exercise our discretion to overlook the waiver of this argument.  Salama suggests that the government would suffer no prejudice were we to consider the argument in his reply brief, which may or may not be true, but he has neither explained why the BIA's decision was not discussed in his opening brief nor why our refusal to exercise

10

our discretion will result in manifest injustice.  See Helping Hand, 515 F.3d at 369 (refusing to overlook waiver where the appellant "has not even explained why it failed to raise these arguments earlier, let alone explained why, absent our consideration, a miscarriage of justice would result").

PETITION FOR REVIEW DENIED

11