**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MARTIN MENDOZA LEIBA,

*Petitioner,*

v.

ERIC H. HOLDER, JR., Attorney
General,

*Respondent.*

No. 11-1845

AMERICAN IMMIGRATION COUNCIL,

*Amicus Supporting Petitioner.*

On Petition for Review of an Order
of the Board of Immigration Appeals.

Argued: September 20, 2012

Decided: November 9, 2012

Before TRAXLER, Chief Judge, DAVIS, Circuit Judge, and
Max O. COGBURN, Jr., United States District Judge
for the Western District of North Carolina,
sitting by designation.

Petition granted by published opinion. Chief Judge Traxler
wrote the opinion, in which Judge Davis and Judge Cogburn
joined.

## COUNSEL

**ARGUED:** Xavier F. Racine, CALDERON, RACINE & DERWIN, PLC, Arlington, Virginia, for Petitioner. Benjamin Winograd, AMERICAN IMMIGRATION COUNCIL, Washington, D.C., for Amicus Supporting Petitioner. Sheri Robyn Glaser, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Tony West, Assistant Attorney General, Anthony P. Nicastro, Senior Litigation Counsel, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. Mary Kenney, AMERICAN IMMIGRATION COUNCIL, Washington, D.C., for Amicus Supporting Petitioner.

## OPINION

TRAXLER, Chief Judge:

Martin Mendoza Leiba ("Mendoza") petitions for review of a decision of the Board of Immigration Appeals ("the Board") affirming a decision of an immigration judge ("IJ") granting a motion by the Department of Homeland Security ("DHS") to pretermit Mendoza's applications for adjustment of immigration status and for a waiver pursuant to Immigration and Nationality Act ("INA") § 212(h). We grant Mendoza's petition.

I.

Mendoza is a native and citizen of El Salvador who entered the United States illegally. He married in 1994, and he and his wife now have five children. Mendoza adjusted his status to that of lawful permanent resident ("LPR") in 1995 through an employment-based immigration petition, and his wife became a naturalized U.S. citizen in 2001.

In 2008, Mendoza was convicted in the Circuit Court of Loudoun County, Virginia, of receiving stolen property, *see* Va. Code § 18.2-108, and he received a 36-month suspended sentence. DHS subsequently commenced removal proceedings against Mendoza in 2010 by filing a Notice to Appear ("NTA") with the Executive Office of Immigration Review. The NTA charged Mendoza with removability under INA § 237(a)(2)(A)(iii), *see* 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien who, "any time after admission," was convicted of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(G), *i.e.*, which includes theft offenses for which the term of imprisonment was at least one year. Through counsel, Mendoza admitted the NTA's factual allegations but denied removability as charged and indicated he would apply for adjustment of status and a waiver under INA § 212(h). *See* 8 U.S.C. § 1182(h). DHS subsequently moved to pretermit Mendoza's application, arguing that his conviction rendered him ineligible for a § 212(h) waiver.

The IJ granted DHS's motion, ruling that an alien convicted of an aggravated felony after obtaining LPR status is ineligible for a § 212(h) waiver. The IJ therefore ordered that Mendoza be removed to El Salvador. Mendoza appealed to the Board, which affirmed the decision and dismissed the appeal. Mendoza now petitions for review of the Board's decision.

## II.

Mendoza argues that the Board erred in finding him barred under § 212(h) from obtaining a waiver of inadmissibility. We agree.

We review de novo the Board's legal conclusions, including those regarding statutory construction. *See Li Fang Lin v. Mukasey*, 517 F.3d 685, 691-92 (4th Cir. 2008). We also grant appropriate deference to the Board's interpretation of the INA under the two-step framework set out in *Chevron U.S.A. Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-44 (1984). Under that

framework, we first consider "whether Congress has directly spoken to the precise question at issue." *Id.* at 842. If a statute is unambiguous concerning the question presented, then "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43; *see Saintha v. Mukasey*, 516 F.3d 243, 251 (4th Cir. 2008). On the other hand, if we conclude that "Congress has not directly addressed the precise question at issue, . . . the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron U.S.A. Inc.*, 467 U.S. at 843.

The statutory provision at the center of this case, § 212(h) of the INA, grants the Attorney General the discretion to excuse the commission of certain crimes or other misconduct that would otherwise preclude noncitizens from entering or remaining in the United States. As it applies to Mendoza, § 212(h) allows the Attorney General to waive an alien's inadmissibility that is based on the alien's conviction for an aggravated felony if the "denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien." 8 U.S.C. § 1182(h)(1)(B).[1]

Before 1996, the only aliens categorically barred from receiving § 212(h) waivers were those who had been convicted of committing, or attempting to or conspiring to commit, "murder or criminal acts involving torture." Immigration Act of 1990, Pub. L. No. 101-649, § 601(d)(4), 104 Stat. 4978, 5076-77. However, with the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Congress created a new category of aliens ineligible for the waiver. New language in § 212(h) provided, in pertinent part, that

---

[1]Such waivers are available not only to those seeking to enter the United States from abroad, but also to those aliens already in the United States who are facing removal and who are eligible to avoid removal. *See Bracamontes v. Holder*, 675 F.3d 380, 385 n.3 (4th Cir. 2012).

No waiver shall be granted under this subsection in the case of an alien *who has previously been admitted to the United States as an alien lawfully admitted for permanent residence* if either since the date of such admission the alien has been convicted of an aggravated felony or the alien has not lawfully resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of proceedings to remove the alien from the United States.

Pub. L. No. 104-208, Div. C, § 348, 110 Stat. 3009 (emphasis added), codified at 8 U.S.C. § 1182(h).[2] The IIRIRA also pro-

[2]Section 212(h), in its entirety, provides:

The Attorney General may, in his discretion, waive the application of subparagraphs (A)(i)(I), (B), (D), and (E) of subsection (a)(2) of this section and subparagraph (A)(i)(II) of such subsection insofar as it relates to a single offense of simple possession of 30 grams or less of marijuana if—

(1)(A) in the case of any immigrant it is established to the satisfaction of the Attorney General that—

(i) the alien is inadmissible only under subparagraph (D)(i) or (D)(ii) of such subsection or the activities for which the alien is inadmissible occurred more than 15 years before the date of the alien's application for a visa, admission, or adjustment of status,

(ii) the admission to the United States of such alien would not be contrary to the national welfare, safety, or security of the United States, and

(iii) the alien has been rehabilitated; or

(B) in the case of an immigrant who is the spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted for permanent residence if it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien; or

(C) the alien is a VAWA self-petitioner; and

vided statutory definitions for "admission" and "admitted," which are defined as "with respect to an alien, the lawful *entry* of the alien into the United States after inspection and authorization by an immigration officer." Pub. L. No. 104-208, Div. C, § 301(a), 110 Stat. 3009 (emphasis added), codified at 8 U.S.C. § 1101(a)(13)(A). On the other hand, the INA defines the term "lawfully admitted for permanent residence" as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant." 8 U.S.C. § 1101(a)(20).

In *Aremu v. Department of Homeland Security*, 450 F.3d 578 (4th Cir. 2006), we construed the definition of "admission" and "admitted" in a context slightly different than that before us here. In that case, the alien, Shanu, had been admitted to the United States on a nonimmigrant visa for pleasure on a six-month visa in 1989. *See id.* at 579. He remained in the country illegally when his visa expired and was able to

---

(2) the Attorney General, in his discretion, and pursuant to such terms, conditions and procedures as he may by regulations prescribe, has consented to the alien's applying or reapplying for a visa, for admission to the United States, or adjustment of status.

No waiver shall be provided under this subsection in the case of an alien who has been convicted of (or who has admitted committing acts that constitute) murder or criminal acts involving torture, or an attempt or conspiracy to commit murder or a criminal act involving torture. No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if either since the date of such admission the alien has been convicted of an aggravated felony or the alien has not lawfully resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of proceedings to remove the alien from the United States. No court shall have jurisdiction to review a decision of the Attorney General to grant or deny a waiver under this subsection.

8 U.S.C. § 1182(h).

adjust to LPR status in 1996. *See id.* In 1998, however, he was convicted of various fraud offenses. *See id.* On the basis of these convictions, he was charged with removability under 8 U.S.C. § 1227(a)(2)(A)(i), which provides that

> Any alien who —
>
>> (I) is convicted of a crime involving moral turpitude committed within five years (or 10 years in the case of an alien provided lawful permanent resident status under section 1255(j) of this title) *after the date of admission*, and
>
>> (II) is convicted of a crime for which a sentence of one year or longer may be imposed,
>
> is deportable.

8 U.S.C. § 1227(a)(2)(A)(i) (emphasis added); *Aremu*, 450 F.3d at 579-80. The IJ concluded that "the date of admission" in this context included not only the date that Shanu was originally admitted to this country but also the date of his adjustment to LPR status, and therefore ordered Shanu removed. *See Aremu*, 450 F.3d at 580. The Board affirmed on appeal, and Shanu filed a petition for review in our court. *See id.*

We granted Shanu's petition under the first prong of *Chevron* review, concluding that in Shanu's case, "the date of admission" unambiguously referred to the date he entered the country, not the date that he adjusted his status. *See id.* at 582-83. We reasoned that an "[a]djustment of status is a method of acquiring status as a permanent resident that is only available to those already within the United States." *Id.* at 581. Because "admission," as Congress defined the term was a type of entry into this country, we concluded that an adjustment of status was not included. *See id.* In so doing, however, we "express[ed] no opinion" whether, in a case in which strict adherence to the definition of "admission" would leave an

alien without any "date of admission," we would use the date of a status adjustment as a proxy for the date of admission in order to avoid producing an absurd result. *See id.* at 583.

In *Bracamontes v. Holder*, 675 F.3d 380 (4th Cir. 2012), a decision issued after the Board issued its decision in the present case, we had occasion to interpret the very same § 212(h) language at issue here. As such, that case bears close examination. Bracamontes was a native of Mexico whose mother brought him to the United States illegally when he was less than two years old. *See id.* at 382. He and his mother were granted temporary resident status in 1987, which was adjusted to LPR status in 1990. *See id.* After 1976, Bracamontes lived continuously in the United States except for one week in 1988 when he visited Mexico. *See id.* In 1999, Bracamontes pled guilty in Virginia state court to an aggravated felony. *See id.* at 383. The issue in *Bracamontes* was whether that aggravated felony rendered Bracamontes ineligible under § 212(h) for a waiver of inadmissibility. An IJ found that it did and the Board agreed and dismissed his appeal. *See id.* Bracamontes then petitioned for review of the Board's decision, and we granted his petition. *See id.* at 383, 389.

Applying the first prong of *Chevron* analysis, we concluded that the § 212(h) waiver bar unambiguously did not apply to Bracamontes. We reasoned that the defined terms "admitted" and "lawfully admitted for permanent residence" both separately appeared in § 212(h) and that they should be given the meaning that Congress specifically designated for them. *See id.* at 385. Replacing the terms in the statute with their respective definitions, we concluded that the language at issue meant:

> No waiver shall be granted under this subsection in the case of an alien who has previously [lawfully entered into the United States after inspection and authorization by an immigration officer] as an alien [with the status of having been lawfully accorded the

privilege of residing permanently in the United States as an immigrant] if . . . since the date of such admission the alien has been convicted of an aggravated felony.

*See id.* at 385-86. Because Bracamontes had never lawfully entered the United States after inspection with LPR status — as he achieved that status only after his last (and only) entry into this country with inspection — we reasoned that the § 212(h) bar plainly did not apply to him. *See id.* at 385. Although the government urged us to treat Bracamontes as having been "admitted" by virtue of his obtaining of his 1990 status adjustment for purposes of § 212(h), we concluded that doing so would require us to ignore the plain meaning of Congress's definition of "admitted," which "[c]learly" does not "include[ ] an adjustment of status." *Id.* We noted further that the government's interpretation would make surplusage out of the words "who has previously been admitted to the United States." *Id.* at 386. Recognizing that we were obliged to give the statute its plain meaning, we rejected the Board's interpretation. *See id.* at 386-87.

We noted that the government argued that our reading of § 212(h) would produce an absurd result, namely that aliens who adjust to LPR status after entering the country would receive more favorable treatment than those who entered with LPR status. *See id.* at 388; *see also Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 304 (4th Cir. 2000) ("If a literal reading of a statute produces an outcome . . . that can truly be characterized as absurd, *i.e.*, that is so gross as to shock the general moral or common sense, then we can look beyond an unambiguous statute and consult legislative history to divine its meaning." (internal citations and quotation marks omitted)), *aff'd sub nom. Barnhart v. Sigmon Coal Co.*, 534 U.S. 438 (2002). We squarely rejected that argument, however, concluding that Congress in fact "may have had rational reasons for making such a distinction." *Bracamontes*, 675 F.3d at 388. In particular, we noted that Congress may well have been

simply taking an incremental approach regarding the achievement of the goal of quickly removing aliens who have committed serious crimes, or it may rationally have concluded that aliens who adjust post-entry are more deserving of being eligible for a waiver because many of them entered this country as minors, grew up here, developed strong ties here, and may well have more citizen relatives who would be hurt by their removal. *See id.* at 389.

We emphasized that our interpretation of § 212(h) was in line with similar rulings from other circuits. *See id.* at 387. We also noted that our interpretation did not conflict with the Board's decision in *Matter of Koljenovic*, 25 I. & N. Dec. 219 (BIA 2010) — which the Board relied on in the present case for its conclusion that Mendoza was "admitted to the United States as an alien lawfully admitted for permanent residence."[3] 8 U.S.C. § 1182(h). We determined that *Koljenovic* was distinguishable since, in contrast to Bracamontes, who had once been admitted to this country when he returned from a week-long trip to Mexico, Koljenovic "effectively had *no* admission at all unless his adjustment of status was used as the relevant date of admission." *Bracamontes*, 675 F.3d at 388. Based on

---

[3]In *Matter of Koljenovic*, the Board noted that it had consistently construed status adjustments as "admissions." *See* 25 I. & N. Dec. 219, 221 (BIA 2010). The Board reasoned that under a contrary determination, "aliens who entered without inspection and later adjusted their status would never have been 'admitted' for permanent residence and would therefore be ineligible for relief from removal that includes an 'admission' requirement." *Id.* The Board further found that the contrary interpretation would also be at odds with INA § 245(b), which requires the Attorney General to "record the alien's lawful admission for permanent residence as of the date" of the grant of the status adjustment. *See id.* The Board also reasoned that Congress would not have intended "for an alien who entered the United States illegally and was afforded the privilege of adjustment of status to be able to avoid the restrictions contained in section 212(h) of the Act, when those very restrictions would apply if the alien had gone through consular processing to be admitted as a lawful permanent resident." *Id.* at 222-23. And, the Board concluded that legislative history supported its result. *See id.* at 222.

this difference, we noted that although the Board in *Koljenovic* "arguably needed to fill in a 'gap' in the language of section 212(h) because it was entirely silent concerning how to treat an alien with *no* lawful entry at all," no such gap existed in Bracamontes's case. *Id.* (emphasis in original).

The government contends that this language in *Bracamontes* shows that Congress left a gap to fill in § 212(h), and thus that under *Chevron*'s second step, we should defer to the Board's reasonable decision as to how to fill the gap. The government maintains that "in section 212(h), Congress did not address the situation of an alien with no lawful entry whatsoever, as the language in section 212(h) refers only to an alien with a previous admission, *i.e.*, an alien who has lawfully entered the United States pursuant to INA § 101(a)(13)(A)." Supp. brief of Respondent at 5-6.

In support of its position, the government argues that this court "acknowledged" the existence of this gap in *Bracamontes*. Supp. brief of Respondent at 5, 6. We disagree. Our discussion of *Koljenovic* in *Bracamontes* explained only that the factual circumstance on which the result in *Koljenovic* was based was not present in *Bracamontes*. We commented that the Board's decision in *Koljenovic* was "arguably" correct, but we certainly did not definitively resolve the proper application of the law to a factual scenario not before us. *Bracamontes*, 675 F.3d at 388. As such, the language represents mere non-binding dicta, and does not answer the question of whether Congress left a gap to fill in § 212(h) as to aliens who have never entered the country legally.

Regarding that question, we conclude that although we did not directly decide whether Congress left such a gap, our analysis in *Bracamontes* shows that no such gap exists. In *Bracamontes*, we reasoned that the term "admitted" in § 212(h) "[c]learly [does not] include[ ] an adjustment of status." *Id.* at 385. Thus, we held:

> As such, an alien with [LPR] status who has entered the United States legally, following inspection by an immigration officer, and is subsequently convicted of an aggravated felony, [has not "been admitted to the United States as an alien lawfully admitted for permanent residence" and thus] is statutorily ineligible for a section 212(h) waiver. *With respect to other aliens, however, the Attorney General retains the discretion to grant a waiver . . . .*

*Id.* at 386 (emphasis added). With Congress having spoken directly to the issue before us, we must enforce § 212(h)'s plain meaning.[4] We note that since *Bracamontes* issued, the Board has reached the same conclusion that we do today

---

[4]Prior to our issuance of *Bracamontes*, the government argued in this appeal that under Mendoza's interpretation, "Congress' employment of the phrase 'alien lawfully admitted for permanent residen[ce]' is, by in large, a misnomer" if aliens can achieve that status without being "admitted." Brief for Respondent at 19. *Bracamontes* forecloses our consideration of that argument, but we note nonetheless that the Supreme Court rejected a similar argument in *Burgess v. United States*, 553 U.S. 124 (2008) (holding in the context of the Controlled Substances Act that although "felony" was a defined term, another defined term, "felony drug offense," included some offenses that did not satisfy the statutory definition of a "felony").

The government further maintains that Mendoza's interpretation would not make sense within § 212(h) itself because under § 212(h), the Attorney General may waive inadmissibility "in the case of an immigrant who is the spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted for permanent residence if it is established to the satisfaction of the Attorney General that the alien's *denial of admission* would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien." 8 U.S.C. § 1182(h)(1)(B) (emphasis added). The government argues that if an adjustment of status is not an admission, then an alien like Mendoza could not obtain a waiver under § 212(h) because "any prospective hardship befalling their family members would no longer be attributable to a denial or refusal of 'admission.'" *Matter of Alyazji*, 25 I. & N. Dec. 397, 403 (BIA 2011). This argument is also foreclosed by *Bracamontes*, which, like the present case, also concerned an alien seeking a § 212(h) waiver based on family hardship.

regarding the consequences of that decision, indicating that in the Fourth Circuit, after *Bracamontes*, the § 212(h) aggravated felony bar unambiguously does not apply to an alien who never entered the United States legally. *See Matter of Rodriguez*, 25 I. & N. Dec. 784, 788 (BIA 2012).

The government argues that accepting Mendoza's interpretation would produce an absurd result in that there is no rational basis for favoring aliens like him, who entered the country illegally and only later obtained their LPR status through adjustment, over those aliens who entered the country legally. As we have explained, however, that is an argument we specifically rejected in deciding *Bracamontes*. *See id.* at 388-89. We are without authority to revisit it here.[5]

The government further contends that adhering to Congress's strict definition of "admitted" in the context of § 212(h) with regard to an alien like Mendoza, who has never legally entered this country but who has adjusted to LPR status, would lead to other absurd results. First, the government contends that such an alien would never be eligible to apply for naturalization despite possessing LPR status because INA § 318 provides, as is relevant here, that "no person shall be naturalized unless he has been *lawfully admitted to the United States for permanent residence* in accordance with all applicable provisions of this chapter." 8 U.S.C. § 1429 (emphasis

---

[5]The government also argues that its construction "provides the most reasonable reading of section 212(h)" since it would prevent § 212(h) from possibly violating the Equal Protection Clause by arbitrarily treating aliens who obtained LPR status after illegally entering the country differently from those who entered the country with LPR status. Brief for Respondent at 32 (citing *Yeung v. INS*, 76 F.3d 337 (11th Cir. 1996)). However, our conclusion in *Bracamontes* that "Congress may have had rational reasons for making such a distinction" certainly saps this argument of any significant persuasive force. *Bracamontes*, 675 F.3d at 388; *see also id.* at 388 n.5 (noting that "courts have consistently overruled" "equal protection challenges to the distinction drawn under section 212(h) between illegal immigrants and those admitted as lawful permanent residents").

added). We do not see why our decision today would affect § 318. As we explained in *Bracamontes*, the terms "lawfully admitted to the United States for permanent residence" and "admitted" have separate definitions. Our decision today, which turns primarily on the meaning of "admitted," should have no bearing on the meaning of "lawfully admitted to the United States for permanent residence" in § 318.

The government next contends that literally applying Congress's definition of "admitted" in cases of aliens who have never lawfully entered this country would produce the absurd result that such aliens would be ineligible to apply for cancellation of removal under INA § 240A. *See* 8 U.S.C. § 1229b. That section provides that the Attorney General may cancel removal of an inadmissible alien if, as is relevant here, he:

> (1) has been an alien lawfully admitted for permanent residence for not less than 5 years,

> (2) has resided in the United States continuously for 7 years *after having been admitted in any status*, and

> (3) has not been convicted of any aggravated felony.

8 U.S.C. § 1229b(a) (emphasis added). The premise of the government's argument that it would be absurd for an alien such as Mendoza to be eligible for a possible § 212(h) waiver but to be ineligible for cancellation of removal is the government's view that Congress intended to create congruity between § 212(h) and § 240A. The distinctions between the language used in § 240A and that used in § 212(h) clearly show, however, that Congress did not intend such congruity. First, § 240A(a)'s requirement that the alien have had LPR status for at least five years is nowhere to be found in § 212(h). Second, unlike in § 212(h), Congress in § 240A decided not to use the term "admitted" along with "lawfully

admitted for permanent residence." "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (alteration in original and internal quotation marks omitted). We certainly see no absurdity in this disparity.

The government next maintains that applying *Bracamontes* to an alien like Mendoza, who never entered this country legally but who has adjusted to LPR status, would produce the absurd result that he would be left in the position of never being removable under INA § 237(a)(2)(A)(iii) as an alien who was convicted of an aggravated felony "any time after admission." 8 U.S.C. § 1227(a)(2)(A)(iii). However, assuming *arguendo* that such a result would be absurd, our decision today does not produce that result and we offer no opinion concerning whether Mendoza could be removed under that subsection. We recognize that for aliens such as Mendoza it is arguable that the date of their status adjustment should be used as a proxy for their date of admission to avoid an absurd result in interpreting *§ 237(a)(2)(A)(iii)*. That recognition, however, does not require us to refrain from enforcing the plain meaning of *§ 212(h)* when the result produced by our application of *§ 212(h)* is not absurd. *See Aremu*, 450 F.3d at 583 (adhering to 8 U.S.C. § 1101(a)(13)(A)'s definition of "admitted" when interpreting a different statute while acknowledging the possibility that adhering to the definition when interpreting other statutes could produce absurd results); *Stone v. Instrumentation Lab. Co.*, 591 F.3d 239, 249 n.10 (4th Cir. 2009) (similar); *see also Lockhart v. United States*, 546 U.S. 142, 146 (2005) ("The fact that Congress may not have foreseen all of the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning." (internal quotation marks omitted)).

Congress has not used the terms "admitted" and "lawfully admitted to the United States for permanent residence" together often in the INA and, indeed, the phrase "admitted to the United States as an alien lawfully admitted for permanent residence" which appears in § 212(h), appears nowhere else in the Code. The fact that Congress decided to use both terms together is a very strong indication that it intended that each term would serve a distinct purpose. Whether we would refrain from enforcing the plain meaning of "admitted" or "admission" in a different statutory context wherein Congress used different language and where adhering to the strict definition of "admitted" or "admission" would produce absurd results is a question we simply are not presented with in this appeal.[6]

The government also maintains that applying Mendoza's interpretation produces the absurd result that even if the Attorney General exercised his discretion to grant Mendoza a § 212(h) waiver, Mendoza would be susceptible to removal under INA § 212(a)(6)(A)(i) as "[a]n alien present in the United States without being admitted or paroled."[7] 8 U.S.C.

---

[6]The Board's decision in *Matter of Espinosa Guillot*, 25 I. & N. Dec. 653 (BIA 2011), supports the conclusion that the government's claimed absurd result would not necessarily follow from our adoption of Mendoza's interpretation. Like Mendoza, the alien in that case was an LPR who had never been "admitted" as that term is defined in 8 U.S.C. § 1101(a)(1)(A). After the alien was convicted of narcotics trafficking, the government commenced removal proceedings on the basis that the alien had been convicted of an aggravated felony and controlled substance violation "after admission." *See, e.g.*, 8 U.S.C. § 1227(a)(2)(A)(iii). Following an Eleventh Circuit decision very similar to the decision we issue today, *Lanier v. Attorney General*, 631 F.3d 1363 (11th Cir. 2011), an IJ determined that the alien's status adjustment did not constitute an "admission" to the United States. *See* 25 I. & N. Dec. at 653-54. The Board reversed, however. In so doing, it read *Lanier* narrowly, noting that *Lanier* relied, as we do here, "on the particular language of section 212(h)" and stating that the "holding should not be read to extend to other provisions of the [INA]." *Id.* at 655.

[7]The government also contends that we should reject Mendoza's proposed interpretation in the case of an alien who has never lawfully entered this country because

§ 1182(a)(6)(A)(i). However, whether Mendoza is removable under § 212(a)(6)(A)(i) is a question not before us. As we have explained, we can determine at the appropriate time how § 212(a)(6)(A)(i) should be interpreted.

Despite the existence of some obvious awkwardness in applying Congress's definition of "admitted" and "admission" in *other* contexts, no absurdity is produced in doing so on the facts before us and Congress's intention regarding the meaning of the language we interpret today is plain. It is thus not surprising that each circuit to construe § 212(h) in the context we address today has concluded that obtaining LPR status unambiguously does not constitute being "admitted" in the context of § 212(h). *See Hanif v. Attorney Gen.*, No. 11-2643, 2012 WL 4044727, at *4-*7 (3d Cir. Sept. 14, 2012); *Lanier v. Attorney Gen.*, 631 F.3d 1363, 1366-67 (11th Cir. 2011); *Hing Sum v. Holder*, 602 F.3d 1092, 1095-1101 (9th Cir. 2010); *Martinez v. Mukasey*, 519 F.3d 532, 544 (5th Cir. 2008). Indeed, in *Hanif* and *Lanier*, the Third and Seventh Circuits adhered to Congress's strict definition of "admitted" on facts indistinguishable from those before us, as those cases, like Mendoza's, involved aliens who had never entered the country legally. How "admitted" and "admission" should be interpreted in other contexts is a question for another day.

> it is unclear how [a § 212(h) waiver] would benefit this alien if he does not achieve an admission upon adjustment of status. If this alien does not achieve an admission upon adjustment, then this alien remains deportable for an act committed prior to the adjustment.

Supp. brief for Respondent at 9. We do not understand the government's argument. To the extent that it maintains that Mendoza himself would continue to be removable for his offense even if the Attorney General granted a § 212(h) waiver, that is simply incorrect. To the extent that it maintains that some other alien might suffer this fate, we do not understand how that would be the case.

### III.

In sum, for all the reasons we have discussed, we hold that the § 212(h) waiver bar unambiguously does not apply to Mendoza, and we grant his petition for review.

*PETITION GRANTED*