**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 22, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CRISTIAN EDUARDO OBREGON
DE LEON,

      Petitioner,

v.

LORETTA E. LYNCH, United States
Attorney General,*

      Respondent.

No. 13-9601

**Petition for Review**
**from the Board of Immigration Appeals**

Kelli J. Stump, Stump & Associates, Oklahoma City, Oklahoma, for Petitioner.

Wendy Benner-Leon, Office of Immigration Litigation, Civil Division, United
States Department of Justice, Washington, D.C. (Stuart F. Delery, Assistant
Attorney General, Civil Division, and Terri J. Scadron, Assistant Director, Office
of Immigration Litigation, on the brief) for Respondent

Before **HOLMES**, **MATHESON**, and **McHUGH**, Circuit Judges.

**HOLMES**, Circuit Judge.

---

    *     In accordance with Rule 43(c)(2) of the Federal Rules of Appellate
Procedure, Loretta E. Lynch is substituted for Eric H. Holder, Jr., as the
respondent in this action.

Petitioner Cristian Eduardo Obregon de Leon ("Mr. Obregon"), a lawful permanent resident of the United States, was convicted under Oklahoma law of various offenses, including possession of stolen vehicles and receipt of stolen property. He was subsequently placed into removal proceedings and deemed removable for having been convicted of a crime involving moral turpitude under 8 U.S.C. § 1227(a)(2)(A)(i). The Immigration Judge ("IJ") and the Board of Immigration Appeals ("BIA" or "the Board") found that he was statutorily ineligible to apply for a discretionary waiver of removal under 8 U.S.C. § 1182(h) because he had previously adjusted to lawful permanent residence status. Mr. Obregon challenges both of these determinations in his petition for review of the BIA's decision.

We affirm the Board's determination that Mr. Obregon is removable because his conviction for possession of stolen vehicles constitutes a crime involving moral turpitude. However, Mr. Obregon *is* statutorily eligible to apply for a discretionary waiver under § 1182(h). Thus, we **deny in part** and **grant in part** his petition for review and **remand** to the BIA for further proceedings consistent with this opinion.

**I**

Mr. Obregon is a native citizen of Guatemala who entered the United States without inspection in September 1997. On March 29, 2007, he adjusted his status to that of a lawful permanent resident ("LPR") under Section 203 of the

Nicaraguan Adjustment and Central American Relief Act of 1997, Pub. L. No. 105-100, 111 Stat. 2160. Four years later, in 2011, Mr. Obregon was charged with, and pleaded guilty to, the following offenses in Oklahoma state court: (1) one count of operation of a chop shop;[1] (2) four counts of possession of a vehicle with altered identification numbers;[2] (3) four counts of possession of a stolen vehicle;[3] and (4) two counts of receipt of stolen property.[4]

---

[1] Okla. Stat. tit. 47, § 1503(A) provides, in relevant part:

Any person who knowingly and with intent that a violation of this section be committed:

1.    Owns, operates, or conducts a chop shop;

[. . .]

upon conviction, is guilty of a felony . . . .

[2] Okla. Stat. tit. 47, § 4–107(a) provides, in relevant part:

Any person . . . who shall destroy, remove, cover, alter or deface, or cause to be destroyed, removed, covered, altered or defaced, the engine number or other distinguishing number of any vehicle in this state . . . shall be deemed guilty of a felony . . . .

[3] Okla. Stat. tit. 47, § 4–103 provides, in relevant part:

A person not entitled to the possession of a vehicle . . . who receives, possesses, conceals, sells, or disposes of it, knowing the vehicle . . . to be stolen or converted under circumstances constituting a crime, shall be guilty of a felony.

[4] Okla. Stat. tit. 21, § 1713(A) provides, in relevant part:

Every person who buys or receives, in any manner, upon any

(continued...)

In January 2013, the Department of Homeland Security ("DHS") filed a Notice to Appear ("NTA") charging that Mr. Obregon was removable for having committed a crime involving moral turpitude ("CIMT") under 8 U.S.C. § 1227(a)(2)(A)(i).[5] At his immigration hearing, Mr. Obregon admitted the factual allegations, but denied that he was removable because, he claimed, the Oklahoma statutes under which he was convicted did "not require an intent to deprive" and thus did not qualify as crimes of moral turpitude. R. at 53 (Hr'g Tr., dated Mar. 18, 2013). However, the IJ found that all four of his convictions constituted crimes involving moral turpitude. With respect to eligibility for waiver relief, the IJ concluded that Mr. Obregon could not "readjust his status with a [§ 1182](h) waiver" under BIA precedent. *Id.* at 39 (Oral Decision of IJ, dated Apr. 22, 2013).[6]

---

[4](...continued)
> consideration, any personal property of any value whatsoever that has been stolen . . . knowing or having reasonable cause to believe the same to have been stolen . . . or who conceals, withholds, or aids in concealing or withholding such property from the owner, shall be guilty of a felony . . . .

[5] 8 U.S.C. § 1227(a)(2)(A)(i) renders removable any alien "convicted of a crime involving moral turpitude committed within five years . . . after the date of admission," and for which "a sentence of one year or longer may be imposed."

[6] 8 U.S.C. § 1182(h) authorizes the Attorney General, in her discretion, to waive the applicability of certain grounds of inadmissibility, including crimes involving moral turpitude. However, the Attorney General may not grant a waiver "in the case of an alien who has previously been admitted to

(continued...)

Mr. Obregon then appealed to the BIA, alleging that the IJ erred because his convictions lacked the "permanent intent to deprive" element necessary to constitute crimes involving moral turpitude. Further, he claimed that he should have been allowed to apply for a § 1182(h) waiver since he did not enter the country as a lawful permanent resident, but rather "adjusted status" to that of a lawful permanent resident after entry.

In a one-judge decision, the BIA dismissed Mr. Obregon's appeal. It noted that "an offense of receiving stolen property qualifies as a CIMT where the offense includes an element of knowing that the property is stolen." *Id.* at 4 (BIA Decision, dated Oct. 2, 2013). It concluded that Mr. Obregon's convictions for possession of stolen vehicles and receiving stolen property met this *mens rea* threshold because they both required "a permanent taking of property known to be stolen." *Id.* Finally, the BIA affirmed the IJ's "findings concerning [Mr. Obregon's] eligibility for relief" because, under its own precedential decision in *Matter of Koljenovic*, 25 I. & N. Dec. 219 (BIA 2010), Mr. Obregon "d[id] not qualify for a section [1182](h) waiver." *Id.* This petition for review followed.

---

[6](...continued)
the United States as an alien lawfully admitted for permanent residence if," as relevant here, "the alien has not lawfully resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of [removal] proceedings."

## II

Mr. Obregon's petition presents two legal questions[7] for our review: (1) whether any of his convictions constitutes a crime involving moral turpitude; and (2) whether 8 U.S.C. § 1182(h), which prevents the Attorney General from granting a waiver of inadmissibility to an individual "who has previously been admitted to the United States as an alien lawfully admitted for permanent residence," applies to those who did not enter as LPRs, but instead adjusted to LPR status after entry into the United States.

We hold that Mr. Obregon's conviction for possession of stolen vehicles, in violation of Okla. Stat. tit. 47, § 4–103, is categorically a crime involving moral turpitude. However, under our court's decision in *Medina-Rosales v. Holder*, 778 F.3d 1140 (10th Cir. 2015), and the BIA's decision in *Matter of J-H-J-*, 26 I. & N. Dec. 563 (BIA 2015), the § 1182(h) bar only applies to aliens who lawfully enter the United States as LPRs, and not those, like Mr. Obregon, who adjust to that immigration status after entering the country.

---

[7]    While 8 U.S.C. § 1252(a)(2)(C) generally divests courts of jurisdiction over cases involving aliens convicted of crimes involving moral turpitude, and § 1252(a)(2)(B)(i) bars judicial review of denials of certain forms of discretionary relief, we may nevertheless consider constitutional claims and questions of law under § 1252(a)(2)(D). Because Mr. Obregon's claims turn on purely legal determinations, we retain jurisdiction. *See Rodriguez-Heredia v. Holder*, 639 F.3d 1264, 1267 (10th Cir. 2011) ("Whether a conviction constitutes a crime involving moral turpitude is a question of law . . . ."); *Diallo v. Gonzales*, 447 F.3d 1274, 1282 (10th Cir. 2006) (construing § 1252(a)(2)(D) to cover questions of statutory construction).

**A**

The question of whether a criminal conviction constitutes a crime involving moral turpitude is a question of law, which we review de novo. *Rodriguez-Heredia v. Holder*, 639 F.3d 1264, 1267 (10th Cir. 2011). We "owe[] no deference to [the BIA's] interpretation of the substance of the state-law offense at issue." *Efagene v. Holder*, 642 F.3d 918, 921 (10th Cir. 2011). However, if a provision of the Immigration and Nationality Act ("INA") "is arguably subject to differing interpretations, we will defer to the BIA's interpretation provided it is reasonable." *Tapia Garcia v. INS*, 237 F.3d 1216, 1220–21 (10th Cir. 2001); *see also Rodas-Orellana v. Holder*, 780 F.3d 982, 990 (10th Cir. 2015) ("'[W]e review the BIA's legal decisions de novo,' but we defer to the BIA's interpretation of ambiguous provisions of the INA, and must accept the BIA's interpretation if it is reasonable." (alteration in original) (quoting *Rivera-Barrientos v. Holder*, 666 F.3d 641, 645 (10th Cir. 2012))).

The phrase "crime involving moral turpitude" is not defined in the INA; instead, its contours have been shaped through interpretation and application by the Attorney General, the Board, and federal courts. It is "perhaps the quintessential example of an ambiguous phrase." *Marmolejo-Campos v. Holder*, 558 F.3d 903, 909 (9th Cir. 2009) (en banc); *see also Michel v. INS*, 206 F.3d 253, 263 (2d Cir. 2000) ("[N]othing in the statute or its legislative history informs our understanding of the term 'moral turpitude[]' . . . ."). We have defined the

concept only very generally as "reach[ing] conduct that is inherently wrong, or *malum in se*, rather than conduct deemed wrong only because of a statutory proscription, *malum prohibitum*." *Efagene*, 642 F.3d at 921; *see also Wittgenstein v. INS*, 124 F.3d 1244, 1246 (10th Cir. 1997) ("Moral turpitude refers 'to conduct which is inherently base, vile, or depraved, contrary to the accepted rules of morality . . . .'" (quoting *Matter of Flores*, 17 I. & N. Dec. 225, 227 (BIA 1980))). In light of the nebulousness of "moral turpitude," we defer to the BIA's interpretation of the term, as long as it reflects a "reasonable policy choice for the agency to make." *Efagene*, 642 F.3d at 921 (quoting *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 845 (1984)); *accord Rodas-Orellana*, 780 F.3d at 990.

## 1

"[C]orrupt scienter is the touchstone of moral turpitude." *Michel*, 206 F.3d at 263. Here, the parties disagree over what the requisite scienter is for the receipt or possession of stolen goods to qualify as a crime involving moral turpitude. Mr. Obregon argues that there must be intent to permanently deprive, while the government claims that knowledge that the goods are stolen is sufficient.

BIA precedent on this question strongly suggests that receiving or possessing stolen goods, with knowledge that the goods are stolen, implicates moral turpitude. *See, e.g.*, *Matter of Salvail*, 17 I. & N. Dec. 19, 20 (BIA 1979)

8

("Conviction under [a] statute [criminalizing possession of stolen goods] is a conviction for a crime involving moral turpitude, as it specifically requires knowledge of the stolen nature of the goods."); *Matter of Patel*, 15 I. & N. Dec. 212, 213 (BIA 1975) ("The California statute involved here requires knowledge that the goods were stolen; therefore, it involves moral turpitude."), *overruled on other grounds by Matter of Castro*, 19 I. & N. Dec. 692 (BIA 1988); *Matter of Z-----*, 7 I. & N. Dec. 253, 255–56 (BIA 1956) (holding that the crime under Connecticut law of "receiv[ing] and conceal[ing] any stolen goods or articles, knowing them to be stolen" involves moral turpitude). Indeed, on at least one occasion, the Board has found that a statute punishing "negligent receipt of [stolen] property" was *not* a crime involving moral turpitude because it punished more than the *knowing* receipt of stolen goods. *Matter of K-----*, 2 I. & N. Dec. 90, 91 (BIA 1944).

Although our court has not addressed this issue, many of our sister circuits have also reached the conclusion that the knowing receipt or possession of stolen goods constitutes a crime involving moral turpitude. *See, e.g.*, *Hashish v. Gonzales*, 442 F.3d 572, 576 n.4 (7th Cir. 2006) ("[R]eceiving stolen property requires the same state of mind, 'knowingly,' . . . and has been recognized as a crime of moral turpitude."); *De Leon-Reynoso v. Ashcroft*, 293 F.3d 633, 637 (3d Cir. 2002) ("[K]nowingly possessing stolen goods is a crime of moral turpitude

. . . ."); *Michel*, 206 F.3d at 263 ("[W]e conclude that all violations of [a New York statute criminalizing possession of stolen property] are, by their nature, morally turpitudinous because knowledge is a requisite element . . . ."); *United States v. Castro*, 26 F.3d 557, 558 n.1 (5th Cir. 1994) ("Convictions for transporting and/or receiving stolen property with knowledge that such property is stolen constitute crimes of 'moral turpitude.'"); *Okoroha v. INS*, 715 F.2d 380, 382 (8th Cir. 1983) (deferring to the BIA's decision that possession of stolen mail constituted a crime involving moral turpitude "because knowledge that the article of mail had been stolen was an essential element of the offense"); *see also Machado-Zuniga v. U.S. Att'y Gen.*, 564 F. App'x 982, 986 (11th Cir. 2014) (unpublished table decision) (per curiam) (holding that transportation of stolen property "once [an individual] knows it is stolen is an affirmative act of dishonest behavior" that constitutes a crime involving moral turpitude).

## 2

Mr. Obregon points out that the Ninth Circuit has diverged from this pattern, and instead has held that a conviction for receipt of stolen property can only constitute a crime of moral turpitude if the statute requires proof of intent to permanently deprive the original owner. *See Castillo-Cruz v. Holder*, 581 F.3d 1154 (9th Cir. 2009). With due respect, we are not persuaded by the Ninth Circuit's analysis.

10

The *Castillo-Cruz* court drew support for an intent-to-deprive element from a distinct line of BIA precedent holding that "a conviction for *theft* is considered to involve moral turpitude only when a permanent taking is intended." *Matter of Grazley*, 14 I. & N. Dec. 330, 333 (BIA 1973) (emphasis added); *see Castillo-Cruz*, 581 F.3d at 1159 (citing, *inter alia*, *Grazley*, 14 I. & N. Dec. at 333, *In re Jurado-Delgado*, 24 I. & N. Dec. 29, 33 (BIA 2006), and *Matter of P-----*, 2 I. & N. Dec. 887 (BIA 1947)). Those cases involve statutes that punished conduct closer to larceny, and do not shed light on the necessary scienter for the *receipt or possession* of stolen property to be morally turpitudinous. *See, e.g.*, *Jurado-Delgado*, 24 I. & N. Dec. at 33 (involving a Pennsylvania statute criminalizing retail theft, which required proof that the defendant "*took* merchandise offered for sale by a store without paying for it and with the intention of depriving the store owner of the goods" (emphasis added)); *Grazley*, 14 I. & N. Dec. at 332 (involving a Canadian statute stating that "[e]very one commits theft who fraudulently and without colour of right *takes*, or fraudulently and without colour of right *converts*" the property of another (emphases added)); *Matter of P-----*, 2 I. & N. Dec. at 887 (involving "the offense of breaking and entering and theft").

As even the Ninth Circuit has acknowledged, the most relevant precedents—i.e., those involving convictions for the receipt or possession of stolen goods—require only knowledge that the goods were stolen. *See Castillo-Cruz*, 581 F.3d at 1159–60, 1159 n.7. The court attempted to distinguish these

11

precedents by observing that the BIA has not expressly found a conviction for the receipt of stolen goods to constitute a crime involving moral turpitude where the alien "acted with . . . knowledge, but not with the intent to deprive the owner of property permanently." *Id.* at 1160. However, the BIA has, at least implicitly, held just that. In both *Matter of Salvail* and *Matter of Patel*, for example, the fact that the state statute criminalized *knowing* possession of stolen goods was enough to establish a crime involving moral turpitude. *Salvail*, 17 I. & N. Dec. at 20; *Patel*, 15 I. & N. Dec. at 213. That the BIA did not inquire further into the aliens' intentions regarding the stolen property suggests that the existence of a permanent intent to deprive, or a lack thereof, is not relevant to the analysis.

Thus, the weight of apposite caselaw from the BIA and our sister circuits supports the view that knowing the goods to be stolen, alone, is sufficient to render an offense a crime of moral turpitude.

**3**

We turn now to the question of whether knowledge is the required *mens rea* for the specific statutes under which Mr. Obregon was convicted. Because the one-judge BIA decision issued in Mr. Obregon's case only addressed his convictions for possession of stolen vehicles and receipt of stolen property, the scope of our inquiry ordinarily would be confined to these two offenses. *See Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006) (holding that where a "single BIA member . . . decide[s] the merits of the appeal by himself and

12

issue[s] 'a brief order,'" "we will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance" (quoting *Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1190 (10th Cir. 2005))). Ultimately, because we affirm the agency's decision that Mr. Obregon was convicted of a crime involving moral turpitude based on his stolen-vehicle conviction, we need not (and thus do not) reach his conviction for receipt of stolen property.

"To determine if a particular conviction under state law meets the definition of an offense for which a noncitizen may be removed under the INA, the elements of the state-law offense are . . . analyzed using the categorical approach . . . ." *Efagene*, 642 F.3d at 921. Mr. Obregon's actual conduct is irrelevant to this analysis; we "presume that the conviction 'rested upon [nothing] more than the least of th[e] acts' criminalized [by the statute], and then determine whether even those acts are encompassed by the generic federal offense." *Moncrieffe v. Holder*, --- U.S. ----, 133 S. Ct. 1678, 1684 (2013) (first and second alterations in original) (quoting *Johnson v. United States*, 559 U.S. 133, 137 (2010)); *accord Ibarra v. Holder*, 736 F.3d 903, 907 (10th Cir. 2013).

In the immigration context, as in diversity cases, we follow the decisions of the state's highest court[8] in order to determine the minimum conduct proscribed by the relevant criminal statute; where that court has *not* interpreted the

---

[8] The Oklahoma Court of Criminal Appeals ("OCCA") is "Oklahoma's court of last resort for criminal cases." *Pierce v. Gilchrist*, 359 F.3d 1279, 1283 (10th Cir. 2004).

provision, however, we must predict how it would rule on the issue. *See Castillo v. Holder*, 776 F.3d 262, 268 n.3 (4th Cir. 2015); *see also Ibarra*, 736 F.3d at 913–15, 919–21 (looking to both state statutes and state court decisions interpreting those statutes in determining the elements of the crime of child abuse); *Efagene*, 642 F.3d at 923–24 (referring to Colorado courts' characterization of the state's sex offender registration statute in deciding whether a violation of the statute was a crime involving moral turpitude); *cf. Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665–66 (10th Cir. 2007) (stating, in a diversity action, that a "federal court must follow the most recent decisions of the state's highest court," but that if "no controlling state decision exists," the court "must attempt to predict what the state's highest court would do" (quoting *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003))).

Felony possession of a stolen vehicle, under Oklahoma law, requires proof of the following elements: "(1) a person not entitled to the possession of a vehicle; (2) who receives, possesses, conceals, sells or disposes of it; (3) *knowing* it to be stolen or converted under circumstances constituting a crime." *F.D.H. v. State*, 734 P.2d 308, 309 (Okla. Crim. App. 1987) (emphasis added); *see* Okla. Stat. tit. 47, § 4–103; Okla. Uniform Jury Instructions-Crim. (OUJI-CR) § 5-117 (listing as an element "knowing [the vehicle] was stolen" or "knowing it was converted under" circumstances constituting a crime). Because knowledge is the *mens rea* for the crime of possession of a stolen vehicle, we may conclude that

14

"the minimum conduct criminalized by the [Oklahoma] statute," *Moncrieffe*, 133 S. Ct. at 1684, qualifies as morally turpitudinous under 8 U.S.C. § 1227(a)(2)(A)(i).

To be sure, we recognize that, contrary to the overwhelming weight of Oklahoma authority, in one instance, the Oklahoma Court of Criminal Appeals ("OCCA") has held that "[i]t is sufficient to prove that the accused had reasonable cause to believe" the vehicle was stolen in order to convict under § 4–103. *Anderson v. State*, 704 P.2d 499, 502 (Okla. Crim. App. 1985) (quoting *Fields v. State*, 666 P.2d 1301, 1303 (Okla. Crim. App. 1983)). However, Mr. Obregon has not cited *Anderson* to us, much less made a cognizable argument for why *Anderson* represents the state of Oklahoma law regarding the necessary *mens rea* for the stolen-vehicle offense. Therefore, we deem—through a proper exercise of our discretion—any *Anderson*-based argument to be waived. *See, e.g.*, *United States v. Ibarra-Diaz*, 805 F.3d 908, 933 (10th Cir. 2015) ("[W]e note that Mr. Ibarra–Diaz has waived any challenge to his conviction as a *principal* by failing to raise or brief the issue."); *Cahill v. Am. Family Mut. Ins. Co.*, 610 F.3d 1235, 1238 (10th Cir. 2010) ("[W]e have no interest in denying relief to [appellant] on technical grounds. But it is not our role to serve as his lawyer. We will not construct arguments for him out of isolated sentences in his briefs. Nor will we fill the gaps in undeveloped arguments unsupported by citations to relevant

15

authority."); *see also Warner v. Patterson*, 534 F. App'x 785, 787 (10th Cir. 2013) (unpublished table decision) (collecting cases).[9]

---

[9] Even were we inclined to consider such an argument on the merits, we would initially observe that a later decision from the same court (i.e., the OCCA)—that is, *F.D.H.*—only lists, as a *mens rea* element, *knowledge* of the vehicle's stolen nature, and does not suggest that "a reasonable cause to believe" would suffice. *See* 734 P.2d at 309. And, when there is an apparent conflict between two of its decisions, the OCCA has stated that "the later opinion[] [is] controlling, and must be held and construed to overrule" prior inconsistent decisions. *Tittle v. State*, 280 P. 865, 868 (Okla. Crim. App. 1929); *accord Roe v. State*, 191 P. 1048, 1052 (Okla. Crim. App. 1920). Thus, it appears likely that *Anderson* has been overruled by the OCCA's subsequent decision in *F.D.H.*

In any event, we would not need to decide whether *F.D.H.* overruled *Anderson* because we would conclude more generally that *Anderson* does not accurately reflect current Oklahoma law. In reaching its position that a "reasonable cause to believe" could support a conviction under § 4–103, *Anderson* relied on *Fields*. *See* 704 P.2d at 502. But *Fields* addressed a different statute, Okla. Stat. tit. 21, § 1713, which criminalizes the receipt of stolen property. *Fields*, 666 P.2d at 1302. And unlike § 4–103, which only refers to "knowing," § 1713 specifically contemplates the receipt of stolen property "knowing or having reasonable cause to believe" it to be stolen. Okla. Stat. tit. 21, § 1713. *See generally Whirlpool Corp. v. Henry*, 110 P.3d 83, 84 (Okla. Crim. App. 2005) ("We look at the plain meaning of the statutory language."). Oklahoma's uniform jury instructions maintain this distinction. *Compare* OUJI-CR § 5-117 (listing "knowing" as the requisite scienter for possession of a stolen vehicle), *with id.* § 5-111 (including "knowing" and "reasonably should have known" in the instruction for receipt of stolen property). And the uniform jury instructions have often guided both the OCCA and our court in defining the bounds of Oklahoma criminal law. *See, e.g.*, *United States v. Trent*, 767 F.3d 1046, 1062 (10th Cir. 2014); *Young v. Sirmons*, 486 F.3d 655, 672 n.8 (10th Cir. 2007); *Townsend v. State*, 144 P.3d 170, 171 (Okla. Crim. App. 2006); *Brown v. State*, 777 P.2d 1355, 1357 (Okla. Crim. App. 1989); *accord Morales-Garcia v. Holder*, 567 F.3d 1058, 1063 (9th Cir. 2009) (referring to California's uniform jury instructions in interpreting a state criminal statute). In sum, all relevant authorities apart from *Anderson*—*viz.*, the statute's plain language, the state's uniform jury instructions, and a later decision of the OCCA—indicate that "knowledge" is the necessary scienter under § 4–103. Thus, even were we to

(continued...)

In order to avoid this result, Mr. Obregon claims that mere knowledge cannot be a sufficiently "vile or depraved" mental state because an individual could be prosecuted under § 4–103 if he received a stolen car, knowing it to be stolen, but with the noble intent of returning it to its rightful owner. Yet his "application of legal imagination to [§ 4–103's] language" will not persuade us without "a realistic probability . . . that [Oklahoma] would apply [the] statute" in such a manner. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). Given that Mr. Obregon does not cite any cases that bear out his fears—and we have not located any—he has not carried his burden of showing an actual risk that Oklahoma would prosecute his hypothetical Good Samaritan. *See id.* ("[H]e must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.").

Thus, Mr. Obregon's conviction for possession of a stolen vehicle under Okla. Stat. tit. 47, § 4–103, is categorically a crime of moral turpitude, and we need not go further in order to affirm the BIA's conclusion that he is removable.

**B**

Mr. Obregon next claims that even if he is removable, he should nevertheless have been afforded the opportunity to apply for a waiver under 8

---

[9](...continued) reach the merits of an *Anderson*-based argument, we would not take *Anderson*, "a single, possibly aberrant state case[,] and elevat[e] it to state law." *Nunez v. Holder*, 594 F.3d 1124, 1141 (9th Cir. 2010) (Bybee, J., dissenting).

U.S.C. § 1182(h). Under controlling precedent from our court and the BIA's recent decision in *Matter of J-H-J-*, he is correct.

Section 1182(h) authorizes the Attorney General, in her discretion, to allow certain convicted aliens to remain in the United States, but prohibits her from granting such a waiver to "an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence" unless certain narrow conditions are met. 8 U.S.C. § 1182(h). Mr. Obregon claims that the statute precludes waivers only for aliens who entered the United States as lawful permanent residents, and does not apply to aliens like him who adjust their status to that of lawful permanent residents after entering the country. The government, in its briefing and at oral argument, countered that the language of § 1182(h) is ambiguous, and as such, we should defer to the agency's decisions in *Matter of Koljenovic*, 25 I. & N. Dec. 219 (BIA 2010), and *Matter of Rodriguez*, 25 I. & N. Dec. 784 (BIA 2012), which construed "admitted" in § 1182(h) to include those who have adjusted their status after entry.[10]

The government has now withdrawn its argument in light of two decisions announced subsequent to the parties' briefing and oral argument in this case.[11]

---

[10] The IJ and the BIA considered themselves bound by *Koljenovic* and *Rodriguez* in the absence of Tenth Circuit precedent to the contrary.

[11] Specifically, on May 12, 2015, the government sent us a letter, pursuant to Federal Rule of Appellate Procedure 28(j), notifying us of the BIA's decision in *J-H-J-*, and informing us that it was withdrawing its argument

(continued...)

First, in *Medina-Rosales*, we held that "only persons who obtained LPR status before or when they entered the United States are barred from seeking a waiver under § 1182(h)." 778 F.3d at 1145. Central to our interpretation of the waiver bar was the "long-standing canon of statutory interpretation[] [that] one should avoid construing a statute so as to render statutory language superfluous." *McCloy v. U.S. Dep't of Agric.*, 351 F.3d 447, 451 (10th Cir. 2003); *see Medina-Rosales*, 778 F.3d at 1145. Specifically, we observed that "admitted" and "lawfully admitted for permanent residence" are *separately* defined terms in the immigration statute. *Medina-Rosales*, 778 F.3d at 1144–45. *Compare* 8 U.S.C. § 1101(a)(13)(A) (defining "admitted"), *with id.* § 1101(a)(20) (defining "lawfully admitted for permanent residence"). While "admitted" "refers expressly to *entry into* the United States," *Medina-Rosales*, 778 F.3d at 1144–45 (quoting *Negrete-Ramirez v. Holder*, 741 F.3d 1047, 1051 (9th Cir. 2014)), "lawfully admitted for permanent residence" refers to "the status of having been lawfully accorded the privilege of residing permanently in the United States," *id.* at 1145 (quoting 8 U.S.C. § 1101(a)(20)), and "encompasses all LPRs, regardless of whether they obtained that status" before or after entering the country, *id.* (quoting *Negrete-Ramirez*, 741 F.3d at 1053). Thus, "[i]f the term 'admitted' in the phrase 'previously been admitted' included post-entry adjustment . . . the first section of

---

[11](...continued)
regarding the interpretation of § 1182(h).

19

the statutory language, 'an alien who has previously been admitted to the United States as,' would be superfluous because the definition of 'lawfully admitted for permanent residence' encompasses adjustment of status." *Id.* at 1145 (quoting *Negrete-Ramirez*, 741 F.3d at 1053–54).[12]

Second, in *Matter of J-H-J-*, the BIA withdrew its opinions in *Koljenovic* and *Rodriguez*, and "accede[d] to the clear majority view" taken by nine circuits,[13] including our own—namely, that the plain language of § 1182(h) "precludes aliens from establishing eligibility for relief *only* if they lawfully

---

[12]     We circumspectly observe that in *Medina-Rosales*, we did not adopt a per se rule that "admission" only means "lawful entry" wherever it is used in the immigration statute. Instead, our analysis was driven by the need to give effect to both "admitted" and "lawfully admitted . . . for permanent residence," as used side by side in § 1182(h). *See Medina-Rosales*, 778 F.3d at 1145 ("The fact that both 'admitted' and 'lawfully admitted to the United States for permanent residence' are used together indicates that Congress intended that they serve different purposes."). The phrase "admitted . . . as an alien lawfully admitted for permanent residence" appears to be unique to § 1182(h). *See Leiba v. Holder*, 699 F.3d 346, 355 (4th Cir. 2012) ("Congress has not used the terms 'admitted' and 'lawfully admitted . . . for permanent residence' together often in the INA and, indeed, the phrase 'admitted to the United States as an alien lawfully admitted for permanent residence' which appears in §[1182](h), appears nowhere else in the Code."). And thus the scope of our holding in *Medina-Rosales* should naturally be read with this limited statutory reference point in mind.

[13]     *Medina-Rosales*, 778 F.3d. at 1145; *Husic v. Holder*, 776 F.3d 59 (2d Cir. 2015); *Stanovsek v. Holder*, 768 F.3d 515 (6th Cir. 2014); *Negrete-Ramirez*, 741 F.3d at 1053–54; *Papazoglou v. Holder*, 725 F.3d 790 (7th Cir. 2013); *Leiba*, 699 F.3d 346; *Hanif v. U.S. Att'y Gen.*, 694 F.3d 479 (3d Cir. 2012); *Lanier v. U.S. Att'y Gen.*, 631 F.3d 1363 (11th Cir. 2011); *Martinez v. Mukasey*, 519 F.3d 532 (5th Cir. 2008). *But see Roberts v. Holder*, 745 F.3d 928, 932 (8th Cir. 2014) (per curiam) (concluding that "§ 1182(h) is ambiguous as to the meaning of 'previously been admitted as an alien lawfully admitted for permanent residence'").

entered the United States as permanent residents" and not if they adjusted to lawful permanent residence status. 26 I. & N. Dec. at 564.

These two decisions clearly foreclose the position that Mr. Obregon is ineligible for relief under § 1182(h), and the government has prudently withdrawn this argument. Thus, bound by our controlling decision in *Medina-Rosales*—and bolstered by consistent holdings from the vast majority of our sister circuits and the BIA's most recent interpretation of § 1182(h) in *Matter of J-H-J-*—we conclude that Mr. Obregon, as an alien who adjusted to LPR status after entry into the United States, should have been afforded the opportunity to apply for a discretionary waiver under 8 U.S.C. § 1182(h).

## III

Although Mr. Obregon is removable for having committed a crime involving moral turpitude—namely, knowing possession of a stolen vehicle—the BIA erred in finding that he was statutorily ineligible to apply for a waiver under § 1182(h). Thus, we **DENY in part** and **GRANT in part** Mr. Obregon's petition for review and **REMAND** the matter to the Board for further proceedings consistent with this opinion.